CASE 45—INSURANCE—OCTOBER 14, 1884.

# North-western Mut. Life Ins. Co. v. Fort's Adm'r.

APPEAL FROM LOUISVILLE CHANCERY COURT.

S. F. obtained an insurance upon his life with appellant for the benefit of his wife.

1. *Held*—The stipulation for the cash payment of the annual interest upon the notes due at the date of the annual maturity of the premiums can not be held as of the substance of the contract.

2. The provision of the policy that if the interest in cash upon the premium notes is not paid, the policy should be forfeited, is against the policy of the law and void.

3. Appellant, having funds of the assured in its possession, more than sufficient to pay the annual interest, it should be held to have applied them to the payment of the interest upon the premium notes.

4. The policy provides that the insured shall be entitled to her part of appellant's profits, and it was the duty of appellant to apply her portion thereof to the extinguishment of the interest due from her.

BARNETT & NOBLE AND BARNETT FOR APPELLANT.

TEMPLE, BODLEY AND CHAS. S. GRUBBS FOR APPELLEE.

No brief.

The appellant undertook to insure the life of Sugg Fort in the sum of ten thousand dollars ($10,000) in consideration of an annual premium note of one hundred and ninety-four dollars (the interest upon which must be paid annually in cash at the date of the annual premium), and of quarterly cash premiums of seventy-two dollars and ten cents ($72.10). The annual premiums on the policy were to be paid for ten years, and the policy contains this proviso: "And the said company further promises and agrees that if default shall be made in the payment of any premium, it will pay, as above agreed, as many tenth parts of the original sum assured as there shall have been complete annual payments made at the time of such default. But, in order to secure such proportion of the policy, all premium notes must be taken up or the interest thereon paid annually in cash on the date of the annual maturity of the premiums until the notes are canceled by returns of the surplus, or the whole policy will be forfeited." The record shows that the assured Sugg Fort paid three full annual premiums and two quarterly premiums on the fourth year, and this suit was instituted to recover three-tenths of said policy, three thousand dollars ($3,000).

Appellant relied on a forfeiture, under the terms of the contract. For which appellee's counsel contend,

1. That in such contracts time is not of the essence of the contract, and such forfeitures as claimed by appellant are in the nature of penalties, and can not be enforced. (St. Louis Life Insurance Company v. Grigsby, 10 Bush, page 310; Montgomery v. Phœnix Mutual Life Insurance Company, 14 Bush, page 66.)

2. In this contract the dividends due the assured are cash dividends, and are more than sufficient to extinguish the interest upon the premium notes, and as dividends must first be applied to the premium notes, no forfeiture can be claimed. (Hull's administrator v. North-western Mutual Life Insurance Ccmpany, 39 Wis., page 397.)

3. There can be no forfeiture in this contract, because as each annual payment of the cash premium was made and the interest on the note paid and a new premium or loan note executed, a complete annual premium was paid and one-tenth of the policy became fixed and vested, and to the extent of each annual premium paid, the policy is non-forfeitable. (Symonds v. North-western Mutual Life Insurance Company, 23 Minn., page 491; Ohde v. Same, 40 Ind., page 357; Little v. Same, 56 Ind., page 504.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

On the seventeenth of January, 1868, in consideration of the annual premium in advance, consisting of an annual premium note of $194, the interest on which was to be paid annually in cash at the date of the maturity of the annual premium, and of the quarterly cash premium of $72.10 to be paid at or before the seventeenth of January, April, July and October in every year, during the first ten years of the continuance of the policy then issued, the North-western Mutual Life Insurance Company insured the life of Sugg Fort, for the use and benefit of Virginia C. Fort, his wife, in the amount of $10,000 for the term of his natural life.

The annual premium notes were executed according to the contract, in January of the years 1868, 1869, 1870 and 1871, and the interest on each of them, except the last mentioned, was paid up to the date of the maturity

of the third annual premium, and the quarterly cash premiums were also paid up to April 17, 1871. But no other notes were given, nor interest or cash premiums paid thereafter.

Sugg Fort died in 1882, and this action was instituted in February, 1883, by the administrator of Virginia C. Fort, who died after her husband, to recover the sum of $3,500, being three and one-half tenths of the amount of the policy. And in an amended petition judgment was also asked for a due proportion of the surplus dividends accruing after the assured ceased to keep up the policy.

The Chancellor rendered judgment in favor of the plaintiff, for the sum of $3,000 and interest thereon from the time the action was commenced, subject to a credit of $698.50 and interest thereon at the rate of seven per cent. per annum, from January 17, 1871, to the date of the judgment, being the amount of the four premium notes left after deducting $77.40, the proportion of the "surplus" on the business of the company for the years 1868, 1869 and 1870, to which the assured was adjudged to be entitled, according to the terms of the policy.

From that judgment the defendant has appealed, and the plaintiff prosecutes a cross-appeal, the former contending the court erred in rendering judgment for any amount, and the latter that the judgment should have been for $3,500 ; that he should have been charged with only three of the premium notes, and that the defendant should have been charged with a due proportion of the surplus on the business of each year since January, 1871.

The following are the provisions contained in the pol-
icy that have a bearing on the questions presented:

"The said company doth hereby promise and agree
to pay said sum assured  *  *  in sixty days after due
notice and proof of the death of the said person, whose
life is hereby assured, the balance of the gross pre-
mium and all notes given for premiums, if any, being
first deducted therefrom. At each distribution of the
surplus, after three years from the date hereof, a due
proportion of such surplus on each and every year's
business, during the continuance of this policy, will be
returned to the said assured; and the said company
further promises and agrees that if default shall be
made in the payment of any premium, it will pay, as
above agreed, as many tenth parts of the original sum
assured as there shall have been complete annual pre-
miums paid at the time of such default. But in order to
secure such proportion of the policy, all premium notes
must be taken up, or the interest thereon be paid an-
nually in cash on the date of the annual maturity of the
premium until the notes are cancelled by returns of
the surplus or the whole policy will be forfeited.

"This policy is issued and accepted by the parties in
interest, on the following express conditions:  *  *

"*Third*. If the said premiums, or the interest upon
any note given for premiums, shall not be paid on or
before the days above mentioned for the payment
thereof,  *  *  then, and in every such case, the com-
pany shall not be liable for the payment of the whole
sum assured, but only for such part thereof as is ex-
pressly stipulated above, and the remainder shall cease
and determine.

"*Fourth.* In every case, when this policy shall cease or become null and void, all payments thereon shall be forfeited to the company.  *  *

"*Seventh.* This policy shall not take effect and become binding on the company until the premium shall be actually paid, during the lifetime of the person whose life is assured, to the company or to some person authorized to receive it, who shall countersign the policy on receipt of the premium."

The defendant filed with its answer, as an exhibit, the four premium notes, which were retained by it, from the dates they were respectively given. The first one of them, the others differing from it only as to date, is as follows:

"MILWAUKEE, January 17, 1868. .

"For value received I promise to pay the North-western Mutual Life Insurance Company one hundred and ninety-four dollars, with interest at the rate of seven per cent. per annum, which interest shall be paid annually or the policy be forfeited; this note being given for part of the premium on policy No. 30,330, is to remain a lien upon said policy until it becomes due by limitation, or by the death of Sugg Fort, when the note shall be deducted from said policy, unless sooner paid. The dividends on the policy are to be applied to the payment of the notes.

V. C. FORT,

By Sugg Fort."

Neither in the policy, nor in the premium notes, is it stipulated that they are to be paid at any fixed time, or, at all events, before the death of the person whose life is assured. On the contrary, it is provided that

whatever amount of the notes may be due after his death is to be deducted from the sum assured, the only provision for the payment of them, or any part of them, during his life, being contained in the notes where it is agreed that the dividends on the policy are to be so applied, which it is manifest are insufficient to liquidate them during an ordinary lifetime. It is, therefore, clear that the failure to pay off the notes during his life was not intended to work a forfeiture of the policy.

Nor is the failure to pay any cash premium made a cause of forfeiture, it being expressly provided otherwise.

The only ground upon which it can be contended that the contract in terms, or by implication, provides for a forfeiture of the whole policy, is the failure to pay annually the interest on the premium notes, and whether such failure has worked a forfeiture in this case is the principal question.

The law does not favor forfeitures, and in order to justify the court in enforcing it in this case, it should be clearly and unambiguously so expressed in the contract, and the payment of the interest annually should be of the substance of the contract, and not then, if the company has waived the forfeiture.

We are not prepared to say that by the terms of this contract, construed and enforced according to the principles applicable to contracts generally, a forfeiture has occurred.

The company, in one clause of the policy, binds itself to return to the assured, at each distribution of the "surplus" after three years from its date, a due pro-

portion of such surplus, on each and every year's business, during the continuance of the policy. No condition is annexed to this undertaking, and we do not, therefore, see how it is possible to avoid the conclusion that the right of the assured to such surplus became vested immediately after the payment of the three annual cash premiums, and the execution of the three first premium notes, which was done before any default in the payment of the interest occurred, or cause of forfeiture on any account existed.

It is also in another clause agreed, in case of default in the payment of any premium, the company will pay as many tenth parts of the original sum as there shall have been complete annual premiums paid at the time of such default. It is true it is in the same clause provided that in order to secure such proportion all premium notes must be taken up, or the interest thereon paid annually in cash on the date of the maturity of the premium until the notes are cancelled by returns of the surplus, or the whole policy will be forfeited. But it is difficult to reconcile the forfeiting part of this ·clause, with a subsequent one in which it is stipulated that in case of default in the payment of a premium or interest upon any note "the company shall not be liable for the payment of the whole sum assured, but only for such part thereof as is expressly stipulated above, and the remainder shall cease and determine." And it is .still more difficult to reconcile it with the preceding clause, in which the return of the surplus to the assured is provided for.

If the rule to construe the language of a contract most strongly against the party employing it be applied

in this case, it would not be unreasonable to conclude that it was not the intention to forfeit the entire policy after there had been three complete annual cash premiums paid and three premium notes executed and interest paid thereon.

But, waiving that question, we are clearly of the opinion that the stipulation for the cash payment of the annual interest on the notes on the date of the annual maturity of the premium, should not be held as of the substance of the contract.

The right of the assured to a due proportion of the surplus dividends, having, after three years from the date of the policy, become vested, as in our opinion was the case, there was, in the possession of the company, belonging to her, an amount more than sufficient to pay the annual interest on the notes executed by her. This fund she was entitled to have returned to her, or applied to the payment of the interest accruing on the notes. It is true there is a stipulation contained in each note that "the dividends on the policy are to be applied to the payment of the notes." But it would not be inconsistent with that stipulation, nor with the right accorded to obligors of notes generally for the assured to have the election to apply the surplus dividends belonging to her to the payment first of the interest. Nor would the company have a right to complain, or be injured by such an application of the dividends; for by this process, interest at the unusual and excessive rate of seven per cent. would be annually compounded, while the interest bearing principal of the note would remain intact.

But whatever may have been the rights of the

assured in respect to the application of the surplus dividends belonging to her, the company has neither returned to her any part of them, nor credited the notes thereby. Having then appropriated and used for its own benefit the fund, which was more than sufficient to pay the interest on the notes, the company should not be now permitted to claim a forfeiture upon the ground of the non-payment, by the assured, of that interest.

Moreover, by the terms of the contract, the annual payment of the interest, as well as the ultimate payment of the notes, was secured; for the lien retained on the policy comprehended the interest as well as the principal, and the company was fully indemnified against the loss of either.

There are, therefore, two reasons why the forfeiture of the entire policy should not be enforced. In the first place, having funds of the insured in its possession more than sufficient to pay the annual interest, which it has not accounted for otherwise, the company should be held to have applied it to the payment of the interest, and consequently there has been, in legal contemplation, no default on the part of the assured in respect to the annual payment of the interest.

In the second place, inasmuch as the company was fully secured against loss of either principal or interest, and in fact had in its possession the means with which to meet the interest, the forfeiture provided for in case of default in payment of the interest must be regarded "as a penalty to secure not the ultimate, but the prompt payment of such interest," and, therefore, not enforcible.

This question has been already passed upon by this

court in the case of St. Louis Mutual Life Insurance·
Co. v. Griggsby, 10 Bush, 317. And as we think the·
ruling was correct, it must be adhered to.

It is true in that case, after a default in the payment
of cash premiums, the policy was commuted and a new
certificate issued. But the question whether default in·
the payment of the annual interest worked a forfeiture·
of the policy, was presented, considered and decided·
by the court.

There it was held that, as the default was only in·
time, and as the company could be given all that it·
stipulated to receive, a case was presented in which·
relief against a forfeiture could and· ought to be af-
forded.

Here the default, if any has occurred, is not of the··
substance of the contract, but in time of the payment
of interest, and the company can be given all that it·
stipulated to receive. On the other hand, to forfeit the·
whole policy on account of default in time of payment
of the interest, which formed but a small part of the··
consideration, and which the company is fully secured·
in the ultimate payment of, if not already paid, would·
impose upon the assured the entire loss of the pre-
miums actually paid. A forfeiture under such circum-
stances would be extremely oppressive, and, if provided·
for in a contract between individuals concerning any·
ordinary business transaction, be held as in the·
nature of a penalty. And, as we are unable to perceive·
any reason for changing or relaxing the rule in respect·
to contracts about the business of life insurance, the·
forfeiture provided for in this case must be likewise so·
held.

It is, therefore, not necessary to decide whether there has been any waiver of the forfeiture by the company.

We do not, however, agree with counsel for appellee, that he is entitled to recover more than three-tenths of the sum assured. For the language of the policy is that if default be made in the payment of any premium, the company will pay only "*as many tenth parts of the original sum assured as there shall have been complete annual premiums paid at the time of such default.*"

It is not pretended that more than three complete annual premiums have ever been paid, and hence only three-tenths of the sum assured can, according to the contract, be recovered. To render judgment for more would be to disregard the language and pervert the obvious meaning of the contract.

There is no provision for cancelling any of the notes, and, as the one executed in January, 1871, was voluntarily given by the assured, appellee should not be permitted to repudiate it, but it must be regarded like the other three, as forming part of the consideration for what he is seeking to recover from the company. Nor do we think that after the assured refused to pay any other cash premiums, to execute any other notes, or to make cash payment of the annual interest, she was entitled to a full participation in the profits. Certainly no more than necessary to offset the interest accruing on the notes given.

Wherefore the judgment is affirmed on the original and cross-appeal.