Vol. 106]          JANUARY TERM, 1899.          591

Mutual Benefit Life Insurance Co. of Newark, N. J., The, v. Dunn.

---

CASE 72—ACTION ON LIFE INSURANCE POLICY—MAY 17.

## Mutual Benefit Life Insurance Co. of Newark, N. J., The v. Dunn.

APPEAL FROM LAW AND EQUITY DIVISION OF JEFFERSON CIRCUIT COURT.

1. LIFE INSURANCE—NON-FORFEITURE CLAUSE—"FULL AMOUNT INSURED BY THIS POLICY."—Where an insurance policy contains a non-forfeiture clause which provides that in the event' the insured fails to pay his annual premium the reserve value of policy and the dividend additions shall be applied as a single premium to carry the policy "for the full amount insured" for a term estimated at the company's published rates and in force at the date of the issual of the policy, the language "full amount insured" means the face of the policy, although the contract contained the stipulation that during the first ten years the uncollected dividends should buy additional insurance.

2. SAME—ESTOPPEL.—In the absence of a plea of estoppel the plaintiff will not be concluded by a different construction of the contract made by the insurance company and sent to the insured in his life-time, of which she had no knowledge.

DODD & DODD FOR THE APPELLANT.

1. What was the full amount of the policy sued on at the date of the lapse thereof?

2. The full amount of the policy sued on at the date of the lapse must be determined by the language of the non-forfeiture provision of the policy as follows: "When after two full annual premiums shall have been paid on this policy it shall cease or become void solely by the non-payment of any premium when due, the *entire* net reserve value of the policy and dividend additions, by the American experience mortality and interest at four per cent. yearly, less any indebtedness to the company on this policy, shall be applied by the company as a single prem-

ium at the company's rates published and in force at this date, . . . . First, to the purchase of non-participating term insurance for the full amount insured by this policy. . . . Note. The first ten years' dividends that may be declared upon this policy will be allowed only on the additional plan."

3. That the language of the non-forfeiture provisions of the policy should be construed and understood according to the common and approved usage of language. See Bailey v. Com., 11 Bush, 688; Williams v. Com., 78 Ky., 93; Com. v. Hollidy, 98 Ky., 618.

4. That what it would have cost the insurance company to have complied with its contract, had the insured died on the day the policy lapsed is, of necessity, the full amount insured by the policy on that date.

5. That the trial court's interpretation and construction of the policy sued on leads to an absurdity, and should for such reason be rejected.

6. That the language of the non-forfeiture provisions of the policy ought to be interpreted in such manner as that it may have effect and not be found vain and illusive.

7. That where the policy provides that "the first ten years' dividends that may be declared upon this policy will be allowed only on the additional plan," and dividends are declared on the policy before it lapses, it can not be said that there is no agreement or promise to pay dividend additions as a part of the amount insured by the policy.

8. The word "addition" means, and can only mean, increase, and there can not be an adition to without an increase of the sum insured.

9. When declared dividends are allowed on the "addition plan" they purchase, or are additional full-paid insurance, and necessarily increase the amount of the policy, and are not, and under the policy could not, be paid-up insurance. (See Notes on Life Insurance by Gustavus W. Smith (2d ed.), p. 112.)

10. Paid-up insurance is, and can not be anything other than a non-forfeitable, non-premium bearing certain sum payable in all events on a certain date, namely, the death of the insured.

11. Dividend additions on the policy sued on were, and are purchased additional participating current insurance, and by their allowance became an integral part of the current policy, and like the policy forfeitable for non-payment of premiums.

12. The appellee can not claim under and against the policy, and as appellant issued in accordance with a fair and reasonable interpretation of the provisions of its policy, a certificate extending the lapsed policy for her benefit for two years and two hundred and sixty-three days she is estopped from claiming otherwise than under the certificate so issued. Hopkins v.

Vol. 106]    JANUARY TERM, 1899.    593

Mutual Benefit Life Insurance Co. of Newark, N. J., The, v. Dunn.

Hopkins, 92 Ky., 327; Miles v. Conn. Mut. Life Ins. Co., 147 U. S., 177.

13. It is a sound principle of law that members of a purely mutual company are bound by the reasonable rules and regulations determined upon by the managing officers of such a company, and as the policy sued on was extended confessedly in conformity to an established and unvarying rule of the company, made by the policy holders through their representatives, it is binding on the members of the company and all who claim under or through them. Lake v. Minn. M. & R. Assn., 52 Am. St. Rep., 538.

14. There can be no vested right in a lapsed policy and the cases of Weisert v. Muehl, 81 Ky., 339; Manning v. Ancient O. U. W., 86 Ky., 139, and Hopkins v. Hopkins, 92 Ky., 327, in this respect are not applicable to the case at bar.

15. The well-established principle of law that "if the language of the policy is capable of two interpretations, that one must be adopted which is most favorable to the assured because the language used is 'that of the insurer,'" does not apply to this case, because the language of the non-forfeiture provisions of the policy sued on is not capable of two interpretations without disregarding the common and approved usage of language and making the same vain and illusive. Ky. Stats., sec. 460.

F. W. MORANCY FOR THE APPELLEE.    (GRUBBS & MORANCY OF COUNSEL.)

1. An insurance policy may by failure to pay premiums die as current insurance, but still live as an agreement for paid-up insurance, whether for a term or for life. 14 Bush, 51; Montgomery v. Phoenix Mut. Life Co.; Mut. Life of N. Y. v. Jarboe, 19 Ky. Law Rep., 1501.

2. It is the universal rule of the courts that a policy of insurance must be construed most strongly against the insurer, and in favor of the assured.

3. Immediately upon the issual of a policy of insurance, the rights of the beneficiary become vested, and can not, during the existence of the contract, be changed, or affected at all by either the assured or the insuree, or both combined. Ky. Stats., sec. 654; 2 Joyes on Insurance, sec. 853; Weisert v. Muehl, 81 Ky., 339; Manning v. Ancient Order U. Workmen, 86 Ky., 136; Hopkins v. Hopkins, 92 Ky., 327.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

This suit was brought by appellee upon a policy of insurance issued by appellant upon the life of Benjamin C.

[ 38 ]

Dunn for the benefit of appellee, who was his wife. The policy was for $5,000, the annual premium of $165.80 being payable upon the 23d of March of each year, until twenty full years' premiums should be paid, or until the death of the insured. It contained a provision that, in case of non-payment of premium, the policy should cease and determine "subject to the provisions of the company's non-forfeiture system," as indorsed on the policy, with an accompanying table. One of the objects secured by the non-forfeiture system referred to was the right to extended insurance for a limited period "for the full amount insured by this policy," in case of lapse by non-payment of premium. The non-forfeiture provision now before us for construction, as indorsed upon the policy, is as follows:

"When, after two full annual premiums shall have been paid on this policy, it shall cease or become void solely by the non-payment of any premium when due, the entire net reserve value of the policy and dividend additions, by the American Experience Mortality, and interest at four per cent. yearly, less any indebtedness to the company on this policy, shall be applied by the company as a single premium at the company's rates published and in force at this date, either—First, to the purchase of non-participating term insurance *for the full amount insured by this policy;* or, second, upon the written application by the owner of this policy, and the surrender thereof to the company at Newark within three months from such non-payment of premium, to the purchase of a non-participating paid-up policy, payable at the time this policy would be payable if continued in force."

In a "Note" at the foot of the indorsemen. it is provided: "The first ten years' dividends that may be declared upon this policy will be allowed only

on the addition plan." That is to say, the dividends declared upon the policy were not to be paid in cash or credited upon the amount of the next premium, but, as contended for by counsel for appellant, were invested in additional insurance, fully paid for by such investment, without any premium chargeable thereon, but under the provisions of the policy, forfeitable by the non-payment of any premium to accrue on the policy, and in that respect differing from what is called "paid-up" insurance.

The pleadings and agreed statement of fact show that there is no dispute as to the following propositions:

(1) Only three premiums were paid, the last premiumhaving been paid by money lent by the company to Dunn.

(2) The net reserve value of the policy was $265.65.

(3) The dividend additions were $163, and the net reserve thereon was $55.98.

(4) The indebtedness of Dunn to the company was $175.-75.

(5) The net reserve value of the policy, together with the net reserve on the dividend additions, amounted after deducting such indebtedness, to $145.88.

(6) The policy lapsed by non-payment of the premium due March 23, 1894.

(7) Dunn died December 19, 1896.

Appellant claims that the net reserve value should, by the terms of the contract, have been applied by the company to the purchase of non-participating term insurance for the sum of $5,163, being the amount written in the face of the policy, plus the dividend additions up to the date of the lapse; because, it is claimed, that would have been the amount payable to the beneficiary had Dunn died just prior to the lapse, and was therefore "the full amount insured by this policy." The net reserve on policy and addi-

tions, $145.88, would, it is conceded, purchase non-partici-
pating term insurance for $5,163 for two years and two
hundred and sixty-three days from March 23, 1894—that
is, up to and until December 11, 1896—and such insurance
would therefore expire eight days before Dunn's death.

Appellee claims that the net reserve should have been ap-
plied as a single premium to the purchase of non-partici-
pating term insurance for $5,000, thereby extending the in-
surance period for that amount for the term of two years
and two hundred and ninety-seven days from March 23,
1894—that is, up to January 14, 1897—twenty-six days
after Dunn's death.

The question, therefore, is as to the construction
of the words, "the full amount insured by this
policy;" and this language should be construed and under-
stood, according to counsel on both sides, according to the
common and approved usage of language; and it seems to
us that the language of the contract should be construed
as of the date when it was entered into, and that such
meaning be given to it as the parties may reasonably be
supposed to have had in their minds at that time. That
contract insured Dunn's life for $5,000. That was the
amount insured. No other amount was insured. It was
agreed that *if* the company earned dividends, and *if* the
directory declared them, they should, for ten years, be in-
vested in the purchase of *additional* insurance. Addition-
al to what? Additional to the sum of $5,000 insured by the
policy at the time the contract was entered into between
the parties.

Said the trial judge, discussing this question upon de-
murrer to the reply:

"What was the full amount insured by the
policy? Undoubtedly, the sum of $5,000. Could

language be plainer? There is no agreement or promise to pay any dividend additions as a part of the amount insured by the policy. Such dividend additions might or might not be made, being wholly dependent upon the degree of success attendant upon the business done by the company, the management of its affairs, and the losses of said company, and also upon the discretion of the directory as to whether there should or should not be a declaration of dividends at all. I can not doubt that this is the proper interpretation and construction of the language used in the provision of the policy referred to; but, if I entertained any doubt upon the subject, then, under the well-recognized rule in the interpretation of policies, the demurrer would have to be overruled; for when words in a policy are, without violence, susceptible to two interpretations, that interpretation will be adopted which will sustain the claim and cover the loss, in preference to that which will defeat the claim. May on Insurance, 1175.

"Bliss, in his excellent work on Life Insurance (section 40), says: 'If it be uncertain, in view of the general terms of an instrument and the apparent object of the parties, whether given words were used in an enlarged or restricted sense, other things being equal, that construction should be adopted which is most beneficial to the promisee. . . . If the language of the policy is capable of two interpretations, that one must be adopted which is most favorable to the assured, because the language used is that of the insurer.' " .

It is agreed that, under the form of the policy sued on, the company has always and without an exception, considered and treated the dividend additions as a part of the full amount insured, under said form of policies.

It is further argeed that, about a month before

the lapse, Dunn made inquiry of the State agent as to what would be the cash surrender value of the policy, and was given the information. In February, 1895, he made inquiry through the local agent, as to what was the cash surrender value and what the extension of time upon the policy. To this inquiry the company responded that it would not, at that late date, be willing to allow any value for the policy, except in the form of extended insurance, and forwarded an extension-certificate for $5,163 for two years and two hundred and sixty-three days from the date of the lapse, being until December 11, 1896, together with the canceled premium-loan certificate. This extension-certificate was delivered to Dunn, and found among his papers after his death.

It is claimed that the appellee is estopped "by the action of the company in issuing, without protest or objection from plaintiff, a certificate of extended insurance extending the lapsed policy on the life of Benjamin C. Dunn for the benefit of plaintiff for two years and two hundred and sixty-three days from the date of the lapse thereof by nonpayment of premiums." Counsel for appellant recognizes "the law as established in the cases of Weisert v. Muehl, 81 Ky., 339; Manning v. Ancient O. U. W., 86 Ky., 139 [9 Am. St. R., 270, 5 S. W., 385], and Hopkins v. Hopkins' Adm'r, 92 Ky., 327 [17 S. W., 864], that the general rule is that the right to a policy of insurance, and the money to become due under it, vests, immediately upon its issuance, in the person named in it as the beneficiary, and that this interest, being vested, can not be transferred by the insured to another person." But counsel claims that these authorities do not apply to the case at bar, for the reason that no vested interest of the

appellee was attempted to be divested by the issuance of
the extension-certificate, and that it was issued in compli-
ance with the terms of the conditional contract of insur-
ance.   It is urged also that the appellee is in the attitude
of claiming a vested right in a lapsed policy.

It is true that the policy had lapsed as to current insur-
ance, but, by virtue of that lapse, the non-forfeiture pro-
viso became operative, as the sole contract of insurance
and the wife, who was the beneficiary named in the policy
had a vested interest in the policy as then existing.

Upon the question of estoppel also. we concur with the
opinion of the trial judge:

"An   estoppel,  to   be   effective,  must   be   pleaded.
The   pleadings   in   this   case   do   not   allege   any
facts   constituting   an   estoppel: there   is   no   allega-
tion charging that plaintiff had any knowledge of, or
was ever informed of, any correspondence, or of the result
of any correspondence, between her husband and the com-
pany, or the company's agents, with respect to the policy
sued on; nor is there any allegation in the pleadings that
Benjamin C. Dunn was the agent, or acting as the agent,
of his wife, the plaintiff, in the correspondence with the
company, or in receiving the certificate of extended term
insurance.

"In the case of Miles v. Connecticut Mutual Life Insur-
ance Co., 147 U. S. 177, [13 Sup. Ct., 275], the insured, Mr.
Miles, in the course of his negotiations with the company,
acted as the agent for his wife, and was treated with by
the   company   as   such   agent. Not   being   able   to
pay   a   premium   about   to   become   due,   Mr.   Miles
wished   to   give   up   a   policy   for   $5,000,   and   take
a   paid-up   policy. He   was   advised   by   the   company
that a plan more beneficial would be to have so much of the

$5,000 released as would enable him, with the sum allowed by the company for such release, to pay what would be due as a premium on the remaining sum under the policy. The necessary calculations being made, Mr. Miles 'procured from the company the requisite papers for the signature of his wife, and afterwards delivered such papers to the company, with her name purporting to be signed to a receipt.' Afterwards, Mr. Miles, not being able to pay the premium upon the policy as reduced, again visited the office of the company, and insisted upon taking out a paid-up policy, and 'he was given the requisite receipt, to procure the signature of his wife to it, and returned it to the company, with what purported to be her signature.' . . 'Mrs. Miles testified that her name in both receipts had been written by her husband without her assent, but it also appeared that her name to the application for the $5,000 policy was written by him, and that in his dealings with two other insurance companies he had signed her name.'

"In the present case the application for insurance was made by Benjamin C. Dunn, as appears from a copy of the application filed with the policy. In the present case it does not appear, from the agreed facts, that Mr. Dunn was acting as the agent of his wife, nor does it appear that the company treated with him as such in the correspondence concerning the policy, or in issuing a certificate of extended term-insurance. By the agreed statement of facts, it appears that Mr. Dunn, on February 20, 1894, wrote to the company's agents asking, 'What will be cash surrender value of policy No. 166,881, when the fourth premium has been paid, due March 23d, 1894?' The letter referred to does not in any way intimate that Mr. Dunn was acting for his wife in making the inquiry. Afterwards, February 6 1895, Mr. Dunn,

through a - special agent of the defendant, inquired 'as to what was the cash value of *his* policy at that time, and what were *his* rights as to Extension Insurance.' The answers to these letters never mention Mrs. Dunn as the owner of the policy,· nor refer to Mr. Dunn as being the agent for his wife.   The company, in its letter of February 12, 1895, to its agents, after referring to the lapse of the policy, the application of the policy reserve to the cancellation of the premium loan and to the extension of the insurance, says:   'We inclose extension certificate 205,544, and canceled premium loan certificate, which you will please forward to Mr. Dunn.'   It further appears from the agreed statement of facts that the certificate of extended insurance was 'delivered to Benjamin C. Dunn, and was kept by him until his death, and was found by plaintiff among his papers after his death.'   It does not appear that plaintiff had any knowledge of the existence of this certificate of extended insurance until she found it among her husband's papers, after his death.

"It is true, as contended by defendant's counsel, that 'no surrender    of    the    policy    was    necessary,    nor    was the    consent    of    the    beneficiary    required    by    the policy    as    a    condition    to    granting    extended    insurance;' but by the very terms of the policy itself, after two full annual premiums have been paid, the insured had a vested right (in the absence of an application for a paid-up policy by the owner of the policy upon the terms and within the time specified in the non-forfeiture provision of the policy) to have the net reserve value of the policy and dividend additions applied by the company (and it is the contract-duty of the company so to do) as a single premium to the purchase of non-participating term insurance.   It is agreed as a fact that the defendant company 'has always,

and without an exception, under the form of the policy sued on, considered and treated the dividend additions as a part of the full amount insured under said form of policies;' and defendant's counsel argue that 'any other construction would not be fair to a policy holder.' The question to be determined in this case is not, what would be fair to a policy holder, but what is the true construction of the contract. In construing a contract, a court will not adopt the interpretation placed upon it by one of the parties to it, unless such interpretation be obviously proper, no matter how often or how uniformly has been such interpretation of similar contracts. In this case it is not alleged in the pleadings, and it does not appear from any of the agreed statement of facts, that plaintiff was ever informed of the construction placed by the company upon the provisions of the policy now in question.

"From the pleadings and the proof (agreed facts) I am of the opinion that the plaintiff is not estopped from denying that such construction was ever assented to or recognized by her as binding upon her, and, there being no estoppel, plaintiff has the right to repudiate the construction placed by the company upon the provision in question, and come into court and demand that the court construe the contract."

The judgment is affirmed, with damages.