## Northwestern Mutual Life Insurance Company v. Barker's Executrix.

(Decided February 24, 1931.)

(As Modified on Denial of Rehearing December 18, 1931.)

SHACKELFORD MILLER, Jr., NEVILLE MILLER, and WM. MARSHALL BULLITT for appellant.

TRABUE, DOOLAN, HELM & HELM for appellee.

Opinion of the Court by Stanley, Commissioner— Affirming.

The late Judge Henry S. Barker had a $5,000 insurance policy with the appellant, which became fully paid up December 31, 1916. On June 8, 1926, he borrowed $3,625, on the policy and executed a note or loan agreement which contained the following clause: "In case of the non-payment of any interest on said loan as above provided, such interest shall be added to and become a part of the principal of said loan and shall bear interest at the rate aforesaid. Whenever the total indebtedness to the said Company on account of said loan and accrued interest shall equal or exceed the cash surrender value of said policy, and thirty-one days after notice shall have been mailed to the last known address of the insured, and of any assignee of said policy, the said policy shall, without other action on the part of the said Company, become void and be deemed surrendered in consideration of the cancellation of said loan."

The interest on the loan was not paid when due on June 8, 1927. On December 9, 1927, the company notified Judge Barker—at least the communication was delivered at his address—that the loan, including accrued interest at that time, equaled or exceeded the cash surrender value of the policy, and unless the loan, or not less than the amount of accrued interest, should be paid before the expiration of thirty-one days, the cash surrender value of the policy would be applied in liquidation of the loan and the policy canceled. No attention seems to have been then given the matter, doubtless because, as is stipulated, the insured was incapacitated by illness to attend to his affairs. On January 12, 1928, the company advised that the cash surrender value of the policy having been exhausted, the policy "is now out of force," and the loan agreement was therewith returned. Judge Barker died April 23, 1928, and this suit was instituted to recover the difference between the indebtedness and the face of the policy, stated to be $951.16.

The right of the insurance company to cancel the policy and avoid payment was denied upon several grounds. The trial court, to whom the case was submitted on the law and facts, did not state the ground upon which he awarded the judgment in favor of the beneficiary in the policy. The arguments made here relate to the validity of the terms of the loan agreement with respect to the power of the company to cancel the policy upon the debt and cash surrender value becoming equal; to the enforceability of that provision on account of the failure of consideration, because more exacting than the rights or privileges extended in the insurance policy; to the meaning of the term "accrued interest"; to a waiver or estoppel; and finally to the ultimate question as to whether the debt was in fact equal to or in excess of the value of the policy, and the action of the company was arbitrary.

Able briefs have been submitted upon all of the propositions, but our decision will be rested upon one of the points embraced by the last stated ground. For the purpose of this opinion, we shall assume or concede the validity, enforceability, and interpretation of the loan agreement as maintained by the insurance company. The primary and controlling question is whether the company was justified in its action canceling the policy, and the solution depends upon whether the collateral security had become exhausted and the insured was fairly dealt with, or whether the action of the company was arbitrary and inequitable.

As stated, on December 9, 1927, the company wrote the insured that his debt, including accrued interest on that day, amounted to $3,958.72, and that as the amount "equals or exceeds the present cash surrender value" of his policy he was thereby notified that, unless he paid the loan or "not less than $217.50 thereof (which was a year's interest) before the expiration of thirty-one days," the surrender value of the policy would be applied to the liquidation of his loan and the policy would be canceled and become null and void. On December 12, and again on January 4, the general agent at Louisville wrote Judge Barker that a remittance of $217.50 would be required before January 9 in order to continue his policy in force.

Now, during all the time the company well knew that its policyholder by the explicit terms of his contract had

a vested right to a proportion of its surplus earnings for that year and was entitled to share in their distribution. This was recognized, for during the running of this thirty-one days of grace, to-wit, on December 29, it sent a check for $57.35 "in payment of dividend due December 31, 1927," under his policy. That sum was in the possession of the company at the time it undertook to forfeit the collateral because it deemed its security exhausted. The security was not exhausted. The company was perfectly safe. It had in its hands, according to its own figures, subsequently disclosed, a policy worth at least $3,958.58 (only 14 cents less than the debt), and $57.35 in addition which belonged to the insured and debtor. When the company advised that it would take a payment of not less than $217.50 in order to save the collateral from forfeiture, it was exacting more than was due it. On that day the company had in its hands $57.21, in cash or the equivalent of cash, in excess of the debt.

It insists, however, that it was not its duty to take the dividend into consideration. Before the policy had become paid up the dividends had been applied in part payment of the premiums. Thereafter, without any specific directions, the company had paid these dividends in cash to the insured. Except when the dividend of December 31, 1926, was paid, the insured owed the company nothing whatever and at that time his note was only six months old and nothing was then due or payable by him. But on December 31, 1927, according to the insurance company's claim, the conditions or relations had changed and there was a past-due debt owing it by the policyholder. The previous election to pay and receive the dividends in cash did not prevent the company either from applying the sum as a credit on the indebtedness or regarding it as additional security. "Dividends and other benefits accrued or to accrue will pass by a valid assignment or transfer of the policy." Section 1166, Joyce on Insurance. In this instance the loan agreement, which the company had prepared, explicitly assigned the policy "including all present and future additions thereto" as security for the loan. We do not suppose any one would contend that if this had been a banking institution it would not have had the right so to regard this sum in its hands. In this field of business an insurance company has no greater privileges or rights

than banks and other money lending agencies. Emig's Adm'r v. Mutual Benefit Life Ins. Co., 127 Ky. 588, 106 S. W. 230, 32 Ky. Law Rep. 484, 23 L. R. A. (N. S.) 828. This is particularly true when the contingencies of a non-paid-up policy are absent. New York Life Ins. Co. v. Curry, 115 Ky. 100, 72 S. W. 736, 24 Ky. Law Rep. 1930, 61 L. R. A. 268, 103 Am. St. Rep. 297. The company in lending money on such a policy has the best and safest sort of investment. Its liability for the face of the policy is as certain as death and that certainty attaches to its security. It was its duty to protect the rights of the insured by applying the available fund in its possession to his advantage (Commonwealth Life Ins. Co. v. Leete, 224 Ky. 584, 6 S. W. (2d) 1057), instead of pursuing a course of conduct which would enable it at his expense to profit nearly a thousand dollars by saving twenty per cent of its fixed liability. It has been held several times by the court that an earned and distributable dividend must be taken into account in ascertaining the amount available for the purchase of extended or non-participating term insurance, which is a form of surrender value, upon lapse of the policy for default in payment of premiums. U. S. Life Insurance Company v. Spinks, 126 Ky. 405, 96 S. W. 889, 29 Ky. Law Rep. 960, 13 L. R. A. (N. S.) 1053, extended opinion 126 Ky. 405, 103 S. W. 335, 31 Ky. Law Rep. 185; Mutual Life Ins. Co. v. Davis, 115 Ky. 404, 73 S. W. 1020, 24 Ky. Law Rep. 2291; Emig's Adm'r v. Mutual Benefit Life Ins. Co., supra; Mutual Benefit Life Ins. Co. v. Emig's Adm'rs, 145 Ky. 660, 141 S. W. 38. And it has been specifically held that in arriving at the value of a policy in a settlement between the parties to a loan the dividends to which the insured was then entitled to receive must be considered. Northwestern Mutual Life Ins. Co. v. Fort's Adm'r, 82 Ky. 269; Mutual Life Insurance Company v. Twyman, 122 Ky. 513, 528, 92 S. W. 335, 97 S. W. 391, 28 Ky. Law Rep. 1153, 30 Ky. Law Rep. 90, 121 Am. St. Rep. 471. The cases of Mutual Benefit Life Insurance Company v. Dunn, 106 Ky. 591, 51 S. W. 20, 21 Ky. Law Rep. 13; and Jefferson v. New York Life Insurance Company, 151 Ky. 609, 152 S. W. 780, are distinguishable as the right to dividends in neither case was a vested one. The rights were contingent and the dividends were payable in the future.

Joyce on Insurance, sec. 1166, thus states the law:

> "So a life policy cannot be forfeited for the non-payment of a premium or assessment when the company has in its possession dividends declared under the policy which should be applied to such payment. And no forfeiture can be declared by the company without notice of the amount due where the assured is entitled to know the amount due over and above dividends in which he shares."

If the first rule thus stated be held confined to dividends equal to or exceeding the amount due, no escape can be had from the second one, for in this case the company not only failed to give notice of the difference, but ignored the sum in its hands and continued to demand the entire interest due.

In the Fort case this appellant undertook to forfeit a policy securing a loan because of the nonpayment of interest. At that time the company had in its hands the share of the policyholder in the surplus earnings which was more than sufficient to pay the interest on the notes. Concerning the act of the company it was written:

> "There are, therefore, two reasons why the forfeiture of the entire policy should not be enforced. In the first place, having funds of the insured in its possession more than sufficient to pay the annual interest, which it has not accounted for otherwise, the company should be held to have applied it to the payment of the interest, and consequently there has been, in legal contemplation, no default on the part of the assured in respect to the annual payment of the interest.
>
> "In the second place, inasmuch as the company was fully secured against loss of either principal or interest, and in fact had in its possession the means with which to meet the interest, the forfeiture provided for in case of default in payment of the interest must be regarded 'as a penalty to secure not the ultimate, but the prompt payment of such interest,' and, therefore, not enforceble."

The table of cash surrender values published in the policy involved in this case did not extend beyond twenty years from its inception, that is, beyond the year 1917.

It was provided, "Values at other periods than those mentioned in the table will be allowed on the same basis and will be stated upon request." Nowhere in the policy, however, was the basis of the allowance exhibited, and it would have been impossible for any one without that knowledge to ascertain the value of the policy either at the time the money was borrowed or the attempt at cancellation was made. After the reception of the dividend check, but before it was cashed and before the expiration of the thirty-one days of grace contained in the notice, Judge Barker's brother made inquiry of the company's general office in Louisville as to the status of the policy, and was informed that it would be necessary to secure the information from the main office at Milwaukee, Wis., and that that would be done within a few days. On January 12, the same day, according to the company's construction of the contract that the policy became void, and on which day it so wrote the insured, the general agent at Louisville, by letter, advised Judge Barker, in answer to the inquiry which had been made, that his policy had no cash value at that time since the loan and accrued interest exceeded the cash value. Here then the promise to state upon request the amount of the cash surrender value was not fulfilled. The insured had the right to know what sum the company was contending was the value. In none of the several communications requesting payment of the $217.50 had the company disclosed that value. It merely continued to advise that the debt equaled or exceeded the value, and even in notifying him that his policy was "out of force" and canceled, it only declared that the cash value had been exhausted.

The company in sustaining the competency of the evidence of its actuary as to what the cash surrender value of the policy was at the end of the twenty-ninth year, when the loan was made, and of the thirtieth year, when the attempted cancellation was made, argues that it was necessary to prove those values by its expert, since the court could not make the calculation because of the intricacy and the various elements entering into the computation of the surrender values. We quite agree with the proposition. The policy is silent, as we have said, as to the basis upon which the surrender values are based. It will not do to say the statute prescribing how the value of a lapsed policy may be arrived at is sufficient, for it only enjoins the minimum value to be given

it. Our reported cases, as well as the testimony in this case, show policies of insurance are issued upon different plans and there is no uniformity among the companies as to what per cent of the reserve above the statutory requirement will be allowed on this account.

How, then, could the company expect its policyholder to know what the value of his security was? Why should it expect him to accept the bald statement that his debt exceeded the value of his collateral? How could it expect him to be other than confused when the company was graciously tendering with one hand the payment of a substantial sum by a letter whose terms were calculated to allay fear of forfeiture, and with the other writing him that his contract out of which that payment arose had been canceled? How can the company expect to justify its action when it withheld answer to his subsequent inquiry as to the status until after the deadline for redemption had passed and then said to him, "You are too late; your policy is of no value"? The failure to disclose the value of this security was as effective as that in the Curry case, which was stated in the policy to be "the customary cash surrender value then allowed by the company," and its action was as unjustifiable as that taken by the company in that case and in the Twyman case, in both of which it was held to be inequitable, and contrary to public policy.

The courts will not aid nor will they permit the enforcement of a penalty for the nonpayment of a debt or the exaction of an oppressive and unconscionable bargain with a debtor by reason of his necessitous circumstances. Such is the consistent view of the proper administration of justice. Principle and authority demand fair dealing by an insurance company with its policyholders as well as by a creditor with his debtor. The application of that rule, reinforced as it is by the conventional attitude of the courts towards forfeitures and the protection of impecunious debtors, makes it readily apparent that the attempt to cancel this policy under the conditions cannot be sustained. By reason of the peculiar relationship existing between an insurance company and its borrowing policyholder—especially where he had fully performed his part of the insurance contract by paying all the premiums required—where its action offends good conscience, it should be held to a strict accountability. We have no difficulty in reaching the conclusion that the act of the

company in forfeiting the policy was unwarranted and unjustified.

In New York Life Insurance Company v. Van Meter's Adm'r, 137 Ky. 4, 121 S. W. 438, 136 Am. St. Rep. 282, where it was found the insurance company was not justified in canceling a policy and where it had tendered and the insured had accepted a small sum as representing the balance between his debt and the value of the policy, it was held that the beneficiary of the policy was not estopped to collect the face of the policy under its extended insurance provisions. The conclusion reached therein and the reasons therefor are in every way applicable here. Indeed, this case presents a much stronger reason why the acceptance of the dividend payment under the circumstances cannot be held to bar the right of the beneficiary in this policy to recover the full sum thereof less the debt.

The trial court having so adjudged, its judgment is affirmed.