MARIE HARMS, Respondent, v. FIDELITY &. CASUALTY CO. OF NEW YORK, a Corpora-. tion, Appellant.

Kansas City Court of Appeals, May 19, 1913.

1. INSURANCE: Release of Claim: Want of Consideration: Evidence. Where in a suit on a policy of insurance the answer· admits the policy, the death of the assured and the identity of the beneficiary, but sets up a release in bar, and the reply pleads want of consideration, duress and fraud in obtaining· the release, such reply is a direct attack on the release and evidence contradicting its recitals as to the existence of certain facts is admissible.

172 Mo. App.—16

Harms v. Casualty Co.

2. ——: ——: Compromise: Disputed Claim. Where a demand is liquidated as to amount but the question of liability depends on extraneous facts, the existence of which are disputed by the parties in good faith, a compromise of the whole by the payment of a part is a sufficient consideration to support a release. The dispute, however, must be real and not pretended. A mere statement in the release will not be sufficient where it is attacked and evidence given to show it false, but the evidence to sustain the release must show that the dispute has some reasonable foundation for its basis.

3. ——: ——: ——. Where want of consideration for a release is claimed, payment of the amount agreed on at a different place or before the original debt is due will be a sufficient consideration to support the agreement. Such consideration, however, must appear to have been one of the moving causes in the minds of the parties to make the release. If the evidence shows neither party gave any heed to it, and it appears that a statement of such consideration was fraudulently inserted in order to make a consideration appear, this will of itself show fraud sufficiently to render such pretended consideration insufficient, especially where the time waived is only a few days and the amount reduced thereby is an unconscionably large sum.

4. ——: Suicide as a Defense. Under Missouri law, suicide is no defense to an action on an insurance policy unless the assured contemplated suicide at the time the policy was taken out.

5. ——: Warranties. Under section 6937 a misrepresentation of a fact in the schedule of warranties is no defense unless the matter misrepresented actually contributed to the assured's death.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*Rosenberger & Reed, Barbee & Roberts* for appellant.

The compromise of a disputed claim, even where the amount is liquidated by contract, is always a sufficient consideration for the release of such part of the claim as is in excess of the amount actually paid under

Harms v. Casualty Co.

the compromise. King v. Life Ins. Co., 36 Mo. App. 128; Marshall v. Larkin, 82 Mo. App. 635; Pickel v. Chamber of Commerce, 10 Mo. App. 191; Reilly v. Chouquette, 18 Mo. 220; Wood v. Telephone Co., 223 Mo. 537; Coal Co. v. Coal Co., 127 Mo. App. 320; Coal Co. v. St. Louis, 145 Mo. 651; Livingston v. Dugan, 20 Mo. 102; Chamberlain v. Smith, 110 Mo. App. 657; 1 Ency. of Law & Practice, 636, 8 Cyc. 509. (2) It has been uniformly held from the earliest times that even where there is a liquidated sum admittedly owing, yet there is adequate consideration for a release of the whole amount when a part of it is paid before the debt is due. While, of course, there was no indebtedness admitted in this case, there being a dispute as to whether anything at all was owing, yet even if the defendant had admitted the entire correctness of plaintiff's claim for the full $2500, yet the making of settlement in advance of the time when payment could have been demanded is in itself sufficient consideration, without more, to support the release. 1 Am. & Eng. Ency. of Law (2 Ed.), 416; 34 Cyc. 1052, note 52; King v. Aetna Ins. Co., 36 Mo. App. 128; Coal Co. v. St. Louis, 145 Mo. 656; Riley v. Kershaw, 52 Mo. 224; Pinnels Case, 5 Coke's, 117A; Weiss v. Marks, 206 Pa. St. 513; Bank v. Shook, 100 Tenn. 436; Boyd v. Moats, 75 Iowa, 151; Marshall v. Bulard, 114 Iowa, 462; Kirchoff v. Voss, 67 Tex. 320; Burch v. Hubbard, 48 Ill. 164; Warren v. Skinner, 20 Conn. 559; Rose v. Hall, 26 Conn. 392; Barry v. Goodrich, 98 Mass. 335; Schneider v. Long, 29 Minn. 254; Fertilizer Co. v. Dunan, 91 Md. 144.

*Reynolds & James, Gilbert Lamb* and *Roy W. Rucker* for respondent.

(1) Even though it is admitted that August Harms came to his death as the result of a self-inflicted gunshot wound, this is no defense, and therefore the sum due this respondent was liquidated. Lo-

gan v. Fidelity & Casualty Co., 146 Mo. 114. (2) Where the demand is fixed or liquidated the acceptance of a sum less than the whole, though tendered in full, will not discharge the debt, since there is no consideration. Winter v. Cable Co., 160 Mo. 159; Willis v. Gammill, 67 Mo. 730; Riley v. Kershaw, 52 Mo. 226; Tucker v. Dolan, 109 Mo. App. 452; Crowder v. Casualty Co., 115 Mo. App. 540; Chamberlain v. Smith, 110 Mo. App. 660; Banking Co. v. Baker, 90 Mo. App. 660; Goodson v. Masonic Association, 91 Mo. App. 351; School Board v. Hull, 72 Mo. App. 403; Biddlecom v. Assurance Corporation, 152 S. W. 103; 34 Cyc. 1052; Insurance Co. v. Rentia, 153 S. W. 14.

TRIMBLE, J.—Plaintiff is the widow of August Harms, deceased, and is the beneficiary in a policy of insurance for $2500 held by him in the defendant company dated August 3, 1910, whereby it insured said Harms for one year against death by external violent means. There was a clause in the policy providing that if the assured committed suicide, the company would pay only $500; and a statement in the schedule of warranties that the assured's habits of life were correct and. temperate.

Harms died on April 7, 1911, as the direct result of a gunshot wound. On April 13, 1911, the company paid plaintiff $1000, and on October 10, 1911, this suit was instituted to collect the remainder due on the policy.

The answer pleaded a compromise and release of plaintiff's claim obtained April 13, 1911, when the $1000 was paid, and alleged that said $1000 was in full settlement of plaintiff's claim, and that plaintiff surrendered the policy and released defendant from all further liability. The reply set up the defense that the pretended release was without consideration and was fraudulently and wrongfully procured from

plaintiff, which pleading is authorized by section 1812, Revised Statutes of Missouri, 1909.

From the foregoing it can be readiy seen that the entire trial was over the validity of the alleged release. The circumstances under which it was obtained are as follows: After the death of her husband, Mrs. Harms left the policy with Mr. Anderson, cashier of one of the banks in Keytesville where she lived, with instructions to collect same for her. Anderson notified the company of the assured's death and asked for the proper blanks on which to make affirmative proof thereof. Instead of complying with this request, the company sent its chief special claim agent, one M. A. Shipley, to Keytesville to adjust the loss. He went to Mrs. Harms' home and informed her of his business and was told by her to take the matter up with her representative Mr. Anderson. Shipley thereupon called on Anderson who demanded the $2500. Shipley said the company was liable for only $500 under the terms and conditions of the policy. This Anderson refused to acept and Shipley then offered $600 which Anderson also refused. After considerable discussion over the matter, Shipley left the bank agreeing to return to Keytesville in about ten days and in that time Anderson was to see Mrs. Harms and discuss the matter of a settlement with her after she had somewhat recovered from the shock of her husband's death. Instead of leaving Keytesville, however, Shipley went back to Mrs. Harms' home and called her attention to the clause in the policy concerning suicide and also the statement in the schedule of warranties that assured was of correct and temperate habits, and read these over to her. He then informed her that her husband was a drunkard, that he had committed suicide and had said, openly and for a long time, that he would commit suicide. He further told her that if she did not accept the money he had offered it would be necessary for her to sue, and all these facts would come out in

court and that even if she won, she would get nothing because the lawyers would get it all. Mrs. Harms is a German, unable to read English and not able to thoroughly comprehend it or to fully express herself in it. Being disturbed and unnerved by what Shipley told her, and perplexed as to what to do, she called an older German woman, Mrs. Hansman, over the telephone and asked her for advice, and then went up to Mrs. Hansman's house some half mile or more away. She testifies that she was frightened at Shipley's manner and was afraid of him and went to Mrs. Hansman's to get rid of him. But he told her he would go with her. On the way Shipley became friendly toward her and said that as she was a widow with five children he would be liberal and would pay her $1000, or $500 more than she was really entitled to. And upon their arrival at Mrs. Hansman's, Shipley again called attention to the suicide clause and the temperate habits clause, mentioned Mr. Harms' alleged drunken habits and said that he had committed suicide, and renewed his offer of $1000. Mrs. Hansman was at first unwilling to advise the plaintiff and sent for Mr. Ray, the assistant cashier of another bank, rival to the one Anderson was connected with. This assistant cashier would not himself advise Mrs. Harms but had a private talk with Mrs. Hansman and after the private talk Mrs. Hansman advised her to accept Shipley's proposition. During this conference between the four of them Shipley said he had received a telegram from the company authorizing him to pay her $1000. Upon request he showed this telegram to Ray, the assistant cashier, but no one informed Mrs. Harms that the telegram was not one received by Shipley after he arrived in Keytesville, nor that it was not sent to him at all, but was one from the company to the St. Louis office instructing that branch to send Shipley to Keytesville with power to pay Mrs. Harms any sum not exceeding $1000 upon the execution by her of a release

of all further liability, such release to be drawn up by an attorney in St. Louis before Shipley started to Keytesville. Finally, after much talk and discussion of the matter and much worry and hesitation on the part of Mrs. Harms as to what she should do, she was induced to go to Anderson and get the policy and take it to the other bank. All repaired to this bank together except Mrs. Hansman. There the release was read over, and after Mrs. Harms had hesitatingly signed it, the agent asked Ray and Taylor, another assistant cashier, to witness her signature. The latter in testifying as to what took place when Mrs. Harms signed the relase said:

"When they first came in and were talking about it, she didn't want to sign this release, and he (Shipley) kept insisting on it, and it seems that Mr. Ray was kind-a trying to influence her to sign it, and they went ahead fixing it up the same, anyway, and finally the man drew his wallet and counted out this money, and pushed the release over to her and told her to sign her name there. She still hesitated like she thought she was being forced, and then went ahead and signed it.

"Q. Then she saw the money and went ahead and took it? A. No, sir; she never did want to sign it. It looked like she signed it against her will. Of course I realized that was her own fight, but that was the way it looked to me.

"Q. You don't mean he forced her to sign it? A. Oh, no."

The release, over which this controversy rages, contained, in a number of paragraphs and under many whereases, statements to the effect that the policy for $2500 was issued to Harms and that Mrs. Harms was the beneficiary; that Harms died from suicide, and that the policy provided that in case of suicide only $500 was due; that the company alleged and the beneficiary denied, that other provisions of the policy had

been violated by reason of which the company was not liable in any sum; that the beneficiary claimed, and the company denied, that it was liable above and beyond the $500; that by reason of all this a controversy existed between them which they have agreed to compromise and settle by the payment of $1000 to Mrs. Harms; that in consideration of such compromise, the company waived notice and proofs of death and also the provision that the company was not required to pay the amount due on the policy until after the expiration of three months from the date of such proof; wherefore, in consideration of all of which, and the payment of said $1000, receipt acknowledged, the said Mrs. Harms released the company from all claims arising out of the policy and cancelled and surrendered same to the company.

At the close of plaintiff's testimony and also at the close of all the testimony, defendant demurred and was overruled. Thereupon the court instructed the jury that under the law there was no consideration for the release pleaded by defendant in bar of plaintiff's action and the finding must be for $1500 with six per cent interest from October 20, 1911, the date of the service of summons on defendant. In accordance with this instruction the jury returned a verdict for $1527.50. Defendant appealed.

The first point raised is that, as the release itself recites a consideration, evidence to contradict such recital was inadmissible and plaintiff is estopped to assert there was in fact no consideration. But this view overlooks the fact that plaintiff's attack on the release is direct and not collateral. The moment the answer was filed admitting everything necessary to entitle plaintiff to recover, and under which she must inevitably recover except for the release pleaded in bar of her action, the case rested solely on the validity of such release. And when the reply was filed setting up fraud, duress and want of consideration, this was

a direct attack upon the release, and evidence showing its invalidity on account of any one of the three things pleaded was admissible. The cases cited as holding such evidence inadmissible were where the fact sought to be disproved was incidental and collateral to the main fact in issue, and hence are not applicable.

It is next insisted that the compromise of a disputed claim is a sufficient consideration in and of itself. This is without doubt true where the amount due is unliquidated and there is a controversy in good faith over the matter. And there may be cases in which the amount in controversy was liquidated where a compromise would be a sufficient consideration if liability depended upon facts the existence of which were in doubt and there was a controversy in good faith over them. But where the demand is fixed or liquidated the acceptance of a sum less than the whole, although expressly stated to be in discharge of the entire sum, will not discharge the debt since there is no consideration. [Winter v. K. C. Cable Company, 160 Mo. 159, l. c. 182; Goodson v. National Assn., 91 Mo. App. 351; 1 Sutherland on Damages (3 Ed.), sec. 248; Tucker v. Dolan, 109 Mo. App. 442, l. c. 452; Biddlecom v. General Accident Corporation, 152 S. W. 103.] It is claimed, however, in this case that the claim was disputed, and that, because of such dispute, a compromise thereof is good and must be upheld since compromises are favored in law. Ordinarily this is true, but the claim must be a real one and the parties must regard their rights concerning it as in fact or law doubtful, and the compromise must be made bona fide. A mere statement in the release that the amount due is in dispute is not enough to show a consideration for the release; the controversy must be real and the issue respecting it be considered by the parties as doubtful. [1 Sutherland on Damages (3 Ed.), sec. 251.] There must be an honest difference between the parties, a dispute in good faith. [Chamberlain v.

Smith, 110 Mo. App. 657, l. c. 660; Biddlecom v. General Accident Assur. Corporation, 152 S. W. 103, l. c. 106.]

Did the evidence show in this case a controversy in good faith? In the first place the demand was liquidated and certain, to-wit, $2500. The first thing mentioned in the release as a ground for controversy is the alleged suicide of Harms. But, even if it were shown that Harms committed suicide (which was not shown, nor any facts tending to show it) still this would constitute no defense unless the suicide was contemplated at the time the policy was taken out. [Logan v. Fidelity and Casualty Company of New York, 146 Mo. 114.] If Harms contemplated suicide at the time he took out the policy, then the company was not liable in any sum, not even the $500 which the facts, admitted by them, show that they did consider they were liable for. Hence, if they considered themselves liable for any amount, whatever, this fact shows they did not think he contemplated suicide at the time the policy was taken out. The release nowhere says Harms contemplated suicide at the time of its issue. Nor does the evidence show that he did. If the release had stated that he contemplated suicide at the time of the issuance of the policy, then it might be that the burden would be on plaintiff to show that such was not the case, though we pass no opinion on it. But the release merely states that he died of suicide, and this fact alone constitutes no defense. When, in addition to this, conceded facts are shown which prove that the company did not think he contemplated suicide, then bad faith, or lack of good faith which is the same thing, on the part of the company, as to the defense of suicide, is conclusively established. True, the release in one clause says the company claims it does not owe anything, but a mere statement in the release to that effect is not sufficient to outweigh the effect of another clause therein which seems, infer-

entially at least, to admit that it does owe $500, and the conceded actions of the company, speaking louder than words, show that it did not consider suicide was a defense.

Another contention now made is that the statement of the assured in the schedule of warranties that he was of "correct and temperate habits" was untrue and a misrepresentation of the facts. Of course, even if this was a misrepresentation, it would not render the policy void unless the matter misrepresented actually contributed to the assured's death. [Sec. 6937, R. S. Mo. 1909.] And the claim is now made that the assured was of intemperate habits, that he committed suicide and that his dissolute habits caused him to end his life, and, therefore, the alleged misrepresentations as to habits were material and avoided the policy; hence there was a bona fide controversy existing between them on which both parties entertained different views in good faith. In view of the fact that there was a directed verdict, if there is any evidence tending to. show that the belief that the alleged intemperate habits had contributed to the assured's death was entertained in good faith, or that a real controversy thereover existed and had some basis on which to stand, then the question of good faith should have been submitted to the jury and, in that event, the case will have to be reversed and remanded. But the evidence does not affirmatively show that Shipley told the plaintiff he was denying all liability whatever because the assured's alleged intemperate habits had resulted in suicide. On the contrary, the position taken with her was that merely because the assured drank in violation of his warranty that he was temperate, this of itself threw doubt on the policy. The other witnesses for defendant who testified as to what Shipley said to plaintiff affirmatively show this and the wording of the release tends to bear out this view since it nowhere says what the alleged violations of

the warranties were nor that they contributed to assured's death and therefore became material under the statute. In addition to this, the actions of the company and of Shipley show they did not really think the alleged habits of assured caused his death. As said in 1 Sutherland on Damages, sec. 251, the mere statement that a controversy exists is not sufficient. In other words, Shipley could not merely by claiming that the assured's alleged intemperate habits rendered the policy void, create a bona fide controversy. He must have reasonable grounds to base it on, that is, the testimony must show facts from which he could reasonably draw such a claim. Now, the first thing going to show his claim was not in good faith on this particular point is that although he may have stated to Anderson at the bank and to Ray, as he said he did, that the company was not liable for anything, yet his admitted conduct shows on its face that he did consider the company liable and was using extraordinary endeavors to get that liability reduced as low as possible. His mere statement, not said to plaintiff but to others, but even if said to her, that the company was not liable at all, would not be allowed to contradict his conceded course of conduct. A claim made under such circumstances would show beyond question that he was making it merely for the purpose of wrongfully obtaining a settlement. Again, the testimony nowhere tends to show that Harms actually did commit suicide. All it shows is that he died from gunshot wound in the head and no one knows how it happened. Again, it is nowhere shown that, even if he did commit suicide, it was caused by intemperate habits. On the contrary, it was shown that while in former years he would get drunk occasionally yet in the latter years of his life these were not so frequent, and he would stay sober for six months at a time. And even this evidence was not offered by defendant. Taylor, who swore he saw him every day the last few years of his life, testi-

fied that he never saw him intoxicated or "out of the way" as he termed it. Hansman, the one who said that in former years he used to get on occasional sprees, testified that he saw him just prior to his death and he was as sober as could be, and that he was working at the time of his death. There was no evidence whatever that he had become morose, gloomy and despondent, or had failed in business, as Shipley claimed to the plaintiff he had learned. If the bare claim or assertion in the release that a controversy existed is not sufficient but facts must exist showing that one did, then Shipley's claim at the trial that such controversy existed, without evidence of facts showing that it had some basis in reason, would not be entitled to any stronger force or effect. And since the evidence did not show such reasonable basis, but, on the contrary, indisputably showed that Shipley was not relying on such alleged misrepresentations in good faith, there was no question on this point to submit to the jury and hence the court did not err in directing a verdict.

The next point made is that inasmuch as the company waived the right to withhold payment for three months after the date of proof of loss, and paid the $1000 down at once, this is an additional consideration which will be sufficient to validate the release. In 1 Sutherland on Damages (3 Ed.), sec. 249, it is said: "If there be any benefit or even legal possibility of benefit to the creditor thrown in, the additional weight will turn the scale and render the consideration sufficient to support the agreement. Payment at a different place or before the original debt is due is sufficient." The clause in the policy does not say the amount due the beneficiary is not due until three months after proof of death, but only that suit shall not be brought before that time. Whether or not this means that the amount is not due until then, the only evidence to show that this was any part of the consideration is the statement in the release to that effect.

There was no evidence anywhere that this was considered by either Mrs. Harms or Shipley in their negotiations as a reason for settling. In fact, Shipley did not say that it was. When the court at the trial asked him about this he evaded answering the question. This evasion and the failure of the evidence to show affirmatively that it entered into the settlement *is an admission* that the allegation in the release to the effect that the three months clause was waived *was itself a fraud* and was a pretended and fictitious consideration. Consequently even if the burden of proof is on plaintiff to show the invalidity of the release, owing to this admission and showing in the testimony, the fraud, and fiction as to this part of the consideration, stands confessed, and there was no question to submit to the jury. While it is true that inadequacy of consideration may not be a good ground for avoiding the release, yet the fact that a clause saying the waiver of the three months is a consideration for remitting $1500 of the amount due is itself a convincing badge of fraud, and shows that the company realized it was hard pressed for a consideration that would in the end hold water.

The question whether or not the court erred in directing a verdict has been the one of most difficulty herein since it was barely mentioned in the briefs on one side, and not noticed at all in those on the other. After carefully going through the case, however, we are of the opinion that, under the conceded facts in this case, the question of whether there was a consideration or not sufficient to sustain the release *became a question of law only*, and, therefore, the court properly directed a verdict. Accordingly the judgment is affirmed. All concur.