## MISSOURI STATE LIFE INS. CO. v. GARRITSON.

No. 24515. March 5, 1935.

Rehearing Denied June 4, 1935.

Hulette F. Aby, William F. Tucker, and Frank Settle, for plaintiff in error.

J. Wood Glass and Glenn H. Chappell, for defendant in error.

PHELPS, J. On March 17, 1919, Robert Newton Garritson bought a 20-payment life insurance policy in the amount of $4,000, the annual premium on which was $163.50. The premium was regularly paid up to June 17, 1927. As a part of the policy contract there was attached to said policy what is designated as "premium reduction coupons" for which no extra or additional charge was made or premiums paid. The insurance company made the insured a loan on his policy. The insured failed to pay the premium due June 17, 1927, or any premiums thereafter. On April 25, 1928, the insured died. At the time default was made in payment of the premium the insured owed the company $686.82 on his loan. At that time the cash surrender value of said insurance policy was $690, leaving a balance to the credit of the insured of $3.18 after satisfying the loan. At the same time the value of the premium reduction coupons was $225.32. Demand was made by Carrie Kinnie Garritson, the surviving widow of the insured, who was the beneficiary under the policy and defendant in error here, for payment of the amount of the policy, claiming that notwithstanding default had been made in payment of the premiums the insurance company had in its hands to the credit of the insured in the form of "premium reduction coupons" a greater sum than the delinquent premiums amounted to up to the death of the insured, and the policy was, therefore, in full force and effect. The insurance company refused to pay the amount claimed to be due under the policy, maintaining that the policy had lapsed and there was no obligation to pay anything other than the amount due under the premium reduction coupons. This the company offered to

pay upon surrender of the policy and the coupons. Suit for the amount of the policy was filed in the district court of Nowata county. Judgment was for the plaintiff, and the company appeals.

In the trial court and here, there was and is no disputed question of fact. The sole question before us is whether the policy lapsed when the insured failed to pay the premium due on June 17, 1927, thereby limiting the obligation of the company to the payment of the amount due under the premium reduction coupons, or whether the fact that the premium reduction coupons amounted to more than was due in premiums kept the policy in force and effect, thus obligating the company to pay the full amount of the policy.

In reaching our conclusion we are favored by an opinion of the Circuit Court of Appeals of the Eighth Circuit, Great Southern Life Ins. Co. v. Jones, 35 F. (2d) 122, wherein the facts were almost identical with the facts in the instant case. The plaintiff in that case brought suit in the district court of Grady county, Okla. The case was transferred to the United States District Court of the Eastern District of Oklahoma, where judgment was rendered for the plaintiff, and the insurance company appealed to the Circuit Court of Appeals. The opinion in that case, affirming the district court, is so exhaustive and the authorities there cited are so convincing that we deem it pertinent to quote from the opinion as follows:

"One coupon matures annually in turn, as long as the premiums are paid. Each is a promise by the company that it will pay the insured the amount stated therein. The policy provides that they may be used by the insured in any one of five ways; that is, by applying each coupon as it became due on the annual premium, by paying all premiums in full, and leaving with the company the amount represented by the coupons as they mature, in which event the policy became fully paid in 14 years, by paying all premiums in full, without reduction, for 20 years, in which event the insured would be entitled to select from certain optional settlements offered; that the amount of the coupons left with the company be payable at any time on presentation; and, lastly, in the event of the death of the insured, the amount of the coupons not then cashed or surrendered would be added to the face value of the policy.

"They contain no other limitations, and the sums payable thereon may very properly be called dividends. Webster's Unabridged Dictionary; Corpus Juris 18, p. 1406. This term as used in insurance law has no narrow, technical signification, and is flexible enough to meet any state of facts. Clearly the face value of each coupon—unless cashed or applied on the premium—must be set aside annually by the company and held to the credit of the insured, subject to his demand, and constitutes dividends, irrespective of the designation given them in the policy.

"The insurance company in seeking to declare a forfeiture comes within the inhibition of the following well-established rule:

" 'The rule has been broadly laid down that a life insurance company cannot insist upon a forfeiture for the nonpayment of a premium, where it has in its possession dividends belonging to the insured sufficient to pay the premiums at maturity.' 19 Am & Eng. Cyc. of Law (2d Ed.) p. 50.

"And in C. J. vol. 32, p. 1308, the rule is stated in almost identically the same language, while in 37 C. J. 486, it is said the insurance company must use any funds in its hands due the insured to avoid a forfeiture. Another statement of the rule is found in the case note to Caywood v. Supreme Lodge, 171 Ind. 410, 86 N. E. 482, 23 L. R. A. (N. S.) 304, 131 Am. St. Rep. 253, 17 Ann. Cas. 503, to wit:

" 'It may be laid down as the general rule, gathered from the cases reviewed in this note, though subject to some exceptions, as will be hereafter seen, that if an insurer has in its hands sufficient funds presently due the insured to pay an assessment or premium upon his policy when due, it is the former's duty to apply the same so as to prevent a forfeiture of the policy.' "

Supplementing the authorities cited in the opinion above quoted from, we call attention to the eighth subdivision of section 10524, O. S. 1931, which reads as follows:

"That in event of default in premium payments after premiums shall have been paid for three years, the insured shall be entitled to a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy and on dividend additions thereto, if any."

Counsel for plaintiff in error call our attention to Union Central Life Ins. Co. v. Williams, 65 F. (2d) 240, the same being an opinion from the Fifth Circuit Court of Appeals (a Texas case), in which the facts are somewhat similar to the facts in the instant case and in which the court arrives at the opposite conclusion. Counsel for plaintiff in error argue that since this is a later case than Great Southern Life Ins. Co. v. Jones, supra, it should be controlling. With this contention we cannot

agree. It will be remembered that in the Great Southern Case the cause of action arose within our own jurisdiction and in the opinion the above-quoted section of our statute is referred to and, in a measure construed, and if there is a conflict in these two opinions, it is our view that our statute and the opinion coming from our own circuit should be given the greater consideration, particularly in view of the weight and reasoning of the authorities therein cited.

It is, therefore, our conclusion that the judgment of the district court of Nowata county should be, and the same is, hereby affirmed.

McNEILL, C. J., and RILEY, BUSBY, and GIBSON, JJ., concur.

---

On Rehearing.

PHELPS. J. The insurance company's petition for rehearing points out that Union Central Life Ins. Co. v. Williams, 65 F. (2d) 240, discussed in the original opinion, has been affirmed by the Supreme Court of the United States in 291 U. S. 170, 78 L. Ed. 711.

We have carefully considered the petition for rehearing, and the response thereto, and compared the above case with Great Southern Life Ins. Co. v. Jones, 35 F. (2d) 122, which latter case was followed by this court in the original opinion.

We observe that the Supreme Court of the United States, in its affirmance of the Union Central Case, did not overrule or criticise the opinion in the Great Southern Case, upon which we based our opinion, for the court said:

"In Great Southern Life Ins. Co. v. Jones, 35 F. (2d) 122, relating to a similar statute of Oklahoma, the policy provided for guaranteed 'premium reduction coupons' which were fixed liabilities requiring a reserve, and were not dividends in the proper sense as in the instant case."

We do not believe that the Supreme Court of the United States intended to narrow the limitation of "dividends" when used in the sense and for the purpose discussed in the authorities quoted from in our original opinion. "Not dividends in the proper sense as in the instant case" still leaves room for the premium reduction coupons to be regarded, for the particular purpose of our case under its own facts, to serve the same purpose as dividends, regardless of whether they should be regarded as a qualified form of dividends. But the important part of the above quotation from the opinion of the Supreme Court of the United States is that such "premium reduction coupons" are "fixed liabilities requiring a reserve". That they are fixed liabilities cannot be denied, for each of the coupons is in effect a promissory note. Such definite "fixed liabilities" do not partake of the variable and uncertain characteristics of reserves and dividends. They were, from the very inception of the policy, a promise to pay a sum certain when the maturity date or dates should be reached, and were cashable if the insured continued the annual payments of premiums to the dates of the respective coupons, and the language of the Supreme Court of the United States, quoted above, is as susceptible of an interpretation that a valid distinction exists between the cases as it is susceptible of the interpretation that the Great Southern Case is in error.

A careful reading of the opinion of the Supreme Court of the United States reveals the tremendous importance placed upon the fact that the policy provided for the exact thing that happened; it provided, "or if the policy lapses, the dividend then shall be paid in cash." The provision in that case was plain and clear, its language left no room for doubt; every possible contingency was provided for. We have no such definiteness and certainty in the policy in the instant case. And in the Union Central Case it was carefully provided, in the policy, that there should be no extended insurance except and only on the basis of the policy's surrender value.

In the instant case the first of the three options afforded insured with reference to the premium reduction coupons is "The insured may use the amounts designated in the coupons hereto attached for the reduction of his premium payments from year to year." In the other two options the close relationship of the premium reduction coupons with the payment of premiums is noticeably evidenced; from the viewpoint of the company there can be no doubt that the prime purpose of incorporating this feature in their policy was to aid and encourage payments of premiums, and to use it whenever possible for that purpose.

It appears to us that if the Supreme Court of the United States intended placing its disapproval upon the Great Southern Case it would have used language to that effect instead of clearly indicating a distinction between the cases.

Another close connection between the premium reduction coupons, and the company's evident intention that they be used in all cases, where possible, in connection with the payment of premiums, is contained in the following provision of the policy: "In case the insured shall pay all premiums in full, without coupon reduction, the unused due coupons shall be placed to the credit of the policy and shall be payable at any time. * * *"

The contention that the insurer had no right to apply the value of the coupons to the payment of premiums during the insured's life, and that if the insurance company had done so he could have objected, does not appear to us to be of much force, for the fact remains that he did not, during his lifetime, demand the cash value of the coupons and on his death the money was in the possession of the insurance company.

Looking at the whole situation from the viewpoint of common justice, there are certain outstanding uncontradicted facts which cannot be ignored. One of them is that up to the date of the insured's death he had, in one form or another, paid the insurance company more than enough to keep the policy in force.

Plaintiff in error also complains of the trial court's permitting plaintiff to recover the cash value of the coupons, in addition to extended insurance. We find that such was not the case; the amount required to purchase extended insurance to the date of the death was subtracted from the total value of the coupons, and the remainder constituted the judgment on that item. For all of the foregoing reasons, this court adheres to its original opinion herein.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, WELCH, CORN, and GIBSON, JJ., concur. BUSBY, J., absent. BAYLESS, J., disqualified.