COLUMBUS MUTUAL LIFE INS. CO. OF COLUMBUS, OHIO, v. DODSON, Adm'x.

*100 P. 2d 256.*

No. 28389.   Nov. 21, 1939.

Rehearing Denied Jan. 23, 1940.

Application for Leave to File Second Petition for Rehearing Denied March 19, 1940.

& McKnight, of Enid, for defendant in error.

RILEY, J. This action was brought by the defendant in error, hereafter referred to as plaintiff, against the plaintiff in error, hereafter referred to as defendant, to compel payment of a life insurance policy. The question presented for decision by this appeal is whether a dividend apportioned to the policy should have been applied to the purchase of extended term insurance. It is conceded by the defendant that if this question is answered in the affirmative, the judgment of the trial court should be affirmed.

The essential facts are not in dispute. On October 6, 1931, the defendant, in consideration of an annual premium of $65.95, issued a participating endowment policy of insurance to John Henry Dodson wherein it is agreed, among other things, that in the event of the death of the said John Henry Dodson, while said policy was in force and effect, it would pay to his estate the sum of $2,500. The policy so issued was a participating one, and in the application made therefor the insured directed that the dividends be left with the defendant to accumulate at interest; although this application was attached to and became a part of the policy, the parties apparently considered the direction given with respect to dividends of no effect, since they acted thereafter as if such direction had never been given. The parties also changed the date for payment of premiums from October 6th to January 6th of each year. The insured paid all premiums which became due and payable up to and including the premium which became due on January 6, 1935, and withdrew in cash all dividends which had been apportioned to the policy up to that time. Thereafter on March 23, 1935, the insured borrowed on the security of his policy the sum of $84, and in this connection executed a loan agreement and an assignment of the policy to the defendant. On October 6, 1935, a dividend in the sum of $9.88 was apportioned to

Maris & Maris, of Ponca City, for plaintiff in error.

Simons, McKnight, Simons, Mitchell

the policy. The defendant on December 17, 1935, notified the insured that said dividend had been apportioned to his policy and also that the annual premium of $65.95 on his policy would fall due on January 6, 1936, and that the same should be paid not later than 31 days thereafter. The insured failed and neglected to pay the premium either on its due date or within the grace period given. The defendant thereafter on February 13, 1936, notified the insured that his policy had lapsed on account of failure to pay premium and urged him to take steps to reinstate the policy. It appears that the insured did nothing in this connection. On February 23, 1936, the insured was accidentally killed, and defendant refused to accept proof of his death, which was tendered to it, and denied all liability other than for the dividend which had theretofore been apportioned to the policy and which amount it tendered to the plaintiff. The sum which the insured had borrowed on the policy exactly equaled the cash surrender value on the date of default, and if the dividend of $9.88 did not have to be applied by the defendant to the purchase of extended term insurance or in payment on the note, then the policy had no value and was not in effect after the expiration of the grace period and when the insured died. It is admitted that had the amount of the dividend been applied to the purchase of extended term insurance, the policy would have been kept in force beyond the date of the death of the insured. The plaintiff contends that it was the duty of the defendant, both under the terms of the contract of insurance and controlling statutes, to make such application. The defendant, on the other hand, earnestly insists that it was neither obligated nor authorized under the contract or the statutory requirements to so apply such dividend, and that its sole duty in the premises consisted, in the absence of directions from the insured, in holding said sum and paying it with interest to the party entitled thereto on demand. The parties cite certain provisions of the policy, certain sections of the statute, and a vast array of decisions both from this jurisdiction and numerous other jurisdictions in support of their several contentions. We will not undertake to review all of the authorities so cited or to discuss them in detail. None of them apply to a situation exactly parallel to the one here involved, and therefore are not controlling.

We will first consider the policy of insurance involved. The pertinent provisions are those which relate to dividends and options on surrender or lapse. The policy, after providing that dividends paid during the lifetime of the insured should be payable to him, gave the following options as to the disposition of dividends:

"Dividends * * * shall, at the option of the life beneficiary be either

"(1)   Paid in cash; or,

"(2)   applied toward the payment of any premium or premiums; or,

"(3)   applied to the purchase of participating paid up additions to the policy; or,

"(4)   (a) left to accumulate to the credit of the policy with interest. * * *"

The options so provided are clear and definite. No one of the options given provides for the use of a dividend to purchase extended term insurance. The insured did not exercise any of the options given, and while in his application he stated that he desired to leave the dividends with the defendant to accumulate at interest, such direction had been abrogated by the parties, since thereafter they proceeded as if it had never been given, the defendant accounting to and paying over in cash to the insured all dividends which had accrued and the insured accepting, receiving, and retaining and using such dividends. Under these circumstances, we will presume that the parties rescinded by mutual consent the prior direction that had been given in the application, and we will place the same construction on the contract which the parties apparently placed thereon. Continental Casualty Co. v. Goodnature, 170 Okla. 477, 41 P. 2d 77.

On March 23, 1935, the withdrawal or loan value of the policy was $84. This continued to be the withdrawal or loan value of the policy until the next annual premium paying date, January 6, 1936. Insured borrowed exactly that sum, with interest to maturity of the note deducted and paid in advance. The note matured January 6, 1936. On that date the loan or reserve value of the policy was exactly the amount due on the note. In addition thereto the company had in its hands the sum of $9.88, arising from a dividend which had been declared or allotted to insured on October 6, 1935. How this $9.88 should have been applied constitutes the principal controversy in this case. Defendant, to some extent, contends that under the provisions of the application for the policy, which was made a part of the policy, it was to be left to accumulate to the credit of the policy with interest, etc., as provided in option 4 of the dividend clause of the policy. But we have pointed out that the parties had wholly disregarded this provision or instruction in the application to the extent that it should be treated as rescinded.

Defendant then contends that $9.88 dividend was at all times subject to withdrawal by the insured, and was, therefore, not available for purchase of extended insurance in any form. This contention is not sustained by the record. The insured had, on March 23, 1935, when he executed the $84 note, and as a part thereof, also executed an assignment of the policy, etc., which reads:

"In consideration of said loan the said policy and all right, title and interest therein, including any dividend additions thereto and all sums of money, interest and benefits whatsoever now due or hereafter to become due, are hereby assigned, transferred and set over by the undersigned to said company as collateral security for the payment of said loan; and it is further agreed that the indebtedness evidenced by this note, including any increase and interest accrued thereon, shall be and remain a first lien against said policy until fully paid."

Clearly this assignment includes any dividend, as well as all sums of money, interest, and benefits whatsoever whether then due or thereafter to become due. Therefore, the $9.88 was not subject to withdrawal by insured. He had pledged it as collateral security for the note. When the note fell due on January 6, 1936, insured had 31 days' grace, or until February 6, 1936, to pay a premium on the policy and keep it in effect as a participating policy with loan rights.

The policy could not be canceled before February 6, 1936.

The $84 note drew interest after maturity at 6 per cent. Then on February 6th there was due on the note $84 principal and 42 cents interest. The reserve value of the policy was $84, not enough to pay the note and interest.

It was the privilege of the company and its duty, as we view the law, to first apply the $9.88 on the note. Harvey Union Central Life Ins. Co., 45 Fed. 2d 79, and N. W. Mutual Life Ins. Co. v. Barker's Ex'x (Ky.) 44 S. W. 2d 292. This, after deducting 42 cents interest, would release $9.56 of the reserve value of the policy. The question then is what should have been done with this $9.56.

Option on surrender or lapse clause of the policy provides:

"After this policy shall have been in force three full years the life beneficiary and assignee, if any, within thirty-one days after any default, may elect (a) to accept the value of this policy in cash, or (b) to have the insurance continued in force from date of default, without future participation and without the right to loans, for the sum insured, including any outstanding dividend additions, less any indebtedness to the Company hereon, or (c) to purchase participating paid-up insurance, payable at the same time on the same conditions as this policy. * * * The cash value shall be the full reserve at the date of default, computed as above, on this policy and on any dividend additions

thereto, less any existing indebtedness to the company on this policy and less a surrender charge never in excess of two and one-half per cent. of the sum insured. This surrender charge, if any, has already been deducted from the cash value shown in the Table of Guarantees. * * * If the owner shall not, within thirty-one days from default, surrender this policy to the Company at its Home Office for a cash surrender value, or for paid-up insurance as provided in options (a) and (c), the insurance will be continued as provided in option (b)."

Insured had not exercised his option under option (a), (b), or (c), then under the last provision of said clause, the insurance was to be continued as provided in option (b). That is, the insurance was to be continued in force, from date of default, without future participation and without the right to loans, for the sum insured, for such time as the amount would continue the insurance at the rate of premium provided in the policy. This would extend the policy in force until after February 23, 1936, the date of the death of insured. This we think is in accord with the policy of the law which is: To prevent forfeiture and provide protection as long as there are funds available therefor. Atlas Life Ins. Co. v. Spitler, 178 Okla. 537, 63 P. 2d 82; Missouri St. Life Ins. Co. v. Garritson, 172 Okla. 483, 45 P. 2d 493. Williams v. Central Union Life Ins. Co., 291 U. S. 170, 78 L. Ed. 711, 92 A.L.R. 693, is cited, and relied upon as holding contrary to the views we have expressed. But there is in reality no conflict. It is true in that case that appellant made the contention that accrued dividends should have been applied in reduction of the advances made on the policy, and thereby raise what remained of the surrender value of the policy to that extent. It is likewise true that the court held, under the facts in that case, that this could not be done. It is pointed out in that case that:

"The company had no right, without agreement with the insured, to apply a dividend, payable in cash, to the reduction of the advance against the policy."

In the instant case, as pointed out, the company had such an agreement with insured. The assignment mentioned above specifically states that it is made as collateral security for the payment of the loan, but it is further stated that it is agreed that the indebtedness evidenced by the·note shall be and remain a first lien against the policy until fully paid. The transaction was not only called a loan, but it was treated as a loan and referred to in the note itself as a debt, and the debt was made a lien on the policy. Certainly the insured must have understood it as a loan of money. When insured signed the note, including the assignment of all sums of money, interest, and benefits whatsoever then due or thereafter to become due, he gave his express assent to the application of dividends thereafter accruing on the policy to the payment of the sum so advanced. This clearly distinguishes this case from Williams v. Union Central L. Ins. Co., supra.

The judgment is affirmed.

BAYLESS, C. J., and OSBORN, CORN, HURST, DAVISON, and DANNER, JJ., concur. WELCH, V. C. J., and GIBSON, J., dissent.