## STATE MUTUAL LIFE ASSUR. CO. OF WORCESTER, MASS. v. FLEISCHER.
### No. 14173.

United States Court of Appeals
Eighth Circuit.

Jan. 24, 1951.

Rehearing Denied Feb. 23, 1951.

James C. Jones, Jr., St. Louis, Mo. (Jones, Hocker, Gladney & Grand, St. Louis, Mo., were with him on the brief), for appellant.

Gilbert Weiss, St. Louis, Mo., for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge, delivered the opinion of the Court.

This appeal is from a judgment in favor of appellee based on a policy of life insurance for $5,000, issued by appellant on the life of Arno E. Fleischer, husband of appellee. We shall refer to the parties as they were designated in the trial court. The facts are not in dispute but were embodied in a written stipulation of facts which the court adopted as its findings of fact. So far as here material the facts may be summarized as follows:

The policy was issued May 23, 1946, and the insured died August 7, 1948. The annual premium provided for in the policy was $346.05. The policy lapsed on two occasions prior to insured's death for nonpayment of premiums. The first lapse occurred May 23, 1947, for the nonpayment of the second annual premium due on that date but the policy was reinstated on July 29, 1947. The second lapse occurred May 23, 1948, for nonpayment of the third annual premium. The policy provided that on the lapse for the nonpayment of premiums after two full years' premiums had been paid, the company, if no other nonforfeiture benefit had been elected by the insured, would apply the net cash value of the policy to continue it in force as participating extended insurance for its face amount less indebtedness thereunder.

According to the method employed by defendant, the cash value of the policy upon its lapse on May 23, 1948, was $251.15, but plaintiff denies the correctness of this construction of the policy which will hereafter be noted. There was a loan outstanding against the policy amounting, with interest, to $241.90. If the amount of this loan be deducted from the cash value as construed by defendant, there would be a balance of $9.25, which would continue the policy in force as extended insurance in the sum of $4758.10 from May 23, 1948 through June 18, 1948. The policy was a participating one and a dividend of $32.45 had been apportioned to it as of May 23, 1948, and plaintiff contends that this dividend should have been applied by the company either in payment of the quarterly premium on the policy on May 23, 1948, or

in reduction of the outstanding policy loan, or added to the cash value of the policy on that date. It was the company's contention that it was not obligated to apply the dividend in either of the three alternative methods contended for by the plaintiff.

The loan was evidenced by an instrument called Policy Loan Certificate, executed by the insured, which instrument recites that the $229.45 "is hereby acknowledged an indebtedness against the policy. Said policy is hereby assigned to said company as security for said loan together with all right, title and interest in and to said policy including all dividends, dividend accumulations and paid-up additions."

The policy in respect to dividends provided as follows:

"The first dividend will be payable upon payment of the second year's premium and a dividend will be payable at the end of the second and of each subsequent policy years. Each such dividend shall be

"(a) payable in cash, or

"(b) used in reduction of premiums, or

"(c) used to purchase paid-up insurance (called 'Dividend Additions') or

"(d) left with the company as a savings fund called 'Dividend Accumulations,' on which interest will be credited annually at not less than two and one-half per cent. If no election is made as to disposition of the dividend prior to any anniversary, such dividend will be applied under option (d). If any premium remains unpaid at the end of the grace period, dividend accumulations shall be applied to the payment of an annual premium, if sufficient, otherwise to such semi-annual or quarterly portion of the annual premium as the dividend accumulations will permit.

"Dividends on extended insurance may not be applied under options (b) or (c)."

In his application for this policy the insured elected the "accumulated dividend option," i. e., that dividends should be "left with the company as a savings fund" with interest. Following the death of the insured defendant on September 15, 1948, mailed to plaintiff its check for the dividend of $32.45, which plaintiff cashed.

The court concluded as a matter of law, based upon the stipulated facts, that because insured had in the policy loan agreement assigned as security for the loan "all right, title and interest in and to said policy, including all dividends, dividend accumulations and paid-up additions," the company on the lapse of the policy for nonpayment of the third premium was obligated to apply the dividend to the reduction of the loan with the result that the outstanding loan with interest was $209.45, instead of $241.90, and deducting the amount of the loan so calculated from the cash value of the policy left a balance of $41.70 on May 23, 1948, which was sufficient to continue the policy in force as extended insurance in the sum of $4790.55. There were certain exhibits attached to and made a part of the stipulated facts.

Defendant in seeking reversal contends: (1) that the court erred in its conclusion of law No. 7, that upon the lapse of the policy for nonpayment of premium due May 23, 1948, defendant under the terms of the loan agreement was required to apply the dividend of $32.45 in reduction of the outstanding policy loan because the application of the dividends would have been in contravention of insured's request in his application for the policy that all dividends should remain on deposit with the company as a savings fund; (2) the court erred in its conclusion of law No. 6, that the plaintiff in accepting and cashing the check for $32.45 sent her for dividend was not estopped from asserting that the dividend should have been applied to reduce the amount of the outstanding policy loan.

After the policy had been in effect for some considerable length of time a loan agreement was executed and by that instrument the insured assigned to the defendant the policy, together with all right, title and interest therein, "including all dividends, dividend accumulations and paid-up additions." It was apparently the view of the trial court that while the assured had exercised his option to have the dividends remain with the company as a savings fund and to bear interest, he had by this subsequent agreement transferred and assigned these dividends to the company and that the company then held the dividends not under the provisions of the policy but under the assignment in connection with the loan and as security therefor.

■ The parties are in agreement that as the insurance policy was a Massachusetts contract it should be construed in accordance with the law of that state. The parties, however, are also in agreement that the question here involved has not been determined by the Massachusetts courts. Diligent counsel have found no decisions of Massachusetts bearing upon the question and we have found none. In these circumstances we are not warranted in speculating as to what the courts of Massachusetts may ultimately hold and we may therefore turn for guidance to the decisions of other jurisdictions which have considered this question.

Appellant relies very strongly on the decision of the Supreme Court in Williams v. Union Central Life Insurance Company, 291 U.S. 170, 54 S.Ct. 348, 349, 78 L.Ed. 711. In that case, so far as disclosed by the opinion, the dividends had not been assigned and in the course of the opinion it is said:

"Dividends may be withdrawn in cash or applied to the payment of premiums or left to accumulate with interest subject to withdrawal at any time."

■ The insured in the instant case, however, having assigned the dividends, was not in position to withdraw them. In none of the other authorities cited does there seem to have been an assignment of dividends as was made here. In the instant case apparently the court based its decision solely upon this assignment. The cases cited by defendant are therefore readily distinguishable. The facts in this case bring it more nearly within the facts involved in Northwestern Mutual Life Ins. Co. v. Barker's Ex'x., Ky., 241 Ky. 490, 44 S.W.2d 292; Columbus Mutual Life Ins. Co. v. Dodson, 186 Okl. 678, 100 P.2d 256 and Wolffe v. John Hancock Mutual Life Ins. Co., Mo.App., 202 S.W.2d 540. In Northwestern Mutual Life Ins. Co. v. Barker's Ex'x., supra, the insured had a life insurance policy which became fully paid up

and against the reserve he borrowed money equaling the total amount of the reserve and executed a note in connection with a loan agreement which provided in case of nonpayment of any interest on the loan the interest should be added and become part of the principal, and that when the total indebtedness to the company on account of the loan equaled or exceeded the cash surrender value of the policy, the policy would without further action on the part of the company become void and deemed surrendered in consideration of the cancellation of the loan. A dividend had been declared but the interest on the loan was not paid on the anniversary of the interest date and the insured failed to tender the interest and the policy was lapsed. The question before the court was whether or not the company was justified in cancelling the policy, it being contended in support of the cancellation that the collateral security had been exhausted. In the course of the opinion it is among other things said:

"It (the company) insists, however, that it was not its duty to take the dividend into consideration. Before the policy had become paid up the dividends had been applied in part payment of the premiums. Thereafter, without any specific directions, the company had paid these dividends in cash to the insured. * * * The previous election to pay and receive the dividends in cash did not prevent the company either from applying the sum as a credit on the indebtedness or regarding it as additional security. 'Dividends and other benefits accrued or to accrue will pass by a valid assignment or transfer of the policy.' Section 1166, Joyce on Insurance. In this instance the loan agreement, which the company had prepared, explicitly assigned the policy 'including all present and future additions thereto' as security for the loan * * * It has been held several times by the court that an earned and distributable dividend must be taken into account in ascertaining the amount available for the purchase of extended or nonparticipating term insurance, which is a form of surrender value, upon lapse of the policy for default in payment of premiums. * * * And it has been specifically held

that in arriving at the value of a policy in a settlement between the parties to a loan the dividends to which the insured was then entitled to receive must be considered. * * *

"Joyce on Insurance, § 1166, thus states the law: 'So a life policy cannot be forfeited for the nonpayment of a premium or assessment when the company has in its possession dividends declared under the policy which should be applied to such payment. And no forfeiture can be declared by the company without notice of the amount due where the assured is entitled to know the amount due over and above dividends in which he shares.'

* * * * * *

"The courts will not aid nor will they permit the enforcement of a penalty for the nonpayment of a debt or the exaction of an oppressive and unconscionable bargain with a debtor by reason of his necessitous circumstances." [241 Ky. 490, 44 S. W.2d 294.]

In Columbus Mutual Life Ins. Co. v. Dodson, supra, the facts were comparable to the facts in the instant case. The assured had borrowed against the policy and had assigned, as here, the dividends together with the policy as security. In that case too the insured had made an election that the dividends be left to accumulate to the credit of the policy with interest. On the death of the insured the company tendered the amount of the dividend and claimed that the option to leave the dividends with the company should control. The court dismissed this contention. In the course of the opinion it is said:

"The insured had on March 23, 1935, when he executed the $84 note, and as a part thereof, also executed an assignment of the policy, etc., which reads: 'In consideration of said loan the said policy and all right, title and interest therein, including any dividend additions thereto and all sums of money, interest and benefits whatsoever now due or hereafter to become due, are hereby assigned, transferred and set over by the undersigned to said company as collateral security for the payment of said loan; and it is further agreed that

the indebtedness evidenced by this note, including any increase and interest accrued thereon, shall be and remain a first lien against said policy until fully paid.' Clearly this assignment includes any dividend, as well as all sums of money, interest and benefits whatsoever whether then due or thereafter to become due. Therefore, the $9.88 was not subject to withdrawal by insured. He had pledged it as collateral security for the note. When the note fell due on January 6, 1936, insured had 31 days grace, or until February 6, 1936, to pay a premium on the policy and keep it in effect as a participating policy with loan rights. The policy could not be cancelled before February 6, 1936.

\* \* \* \* \* \*

"It was the privilege of the company and its duty, as we view the law to first apply the $9.88 on the note. \* \* \*" [186 Okl. 678, 100 P.2d 258.]

The court, referring to the authorities relied on by the insurance company, said:

"Williams v. Union Central Life Ins. Co., 291 U.S. 170, 54 S.Ct. 348, 352, 78 L. Ed. 711, 92 A.L.R. 693, is cited, and relied upon as holding contrary to the views we have expressed. But there is in reality no conflict. It is true in that case that appellant made the contention that accrued dividends should have been applied in reduction of the advances made on the policy, and thereby raise what remained of the surrender value of the policy to that extent. It is likewise true that the court held under the facts in that case that this could not be done. It is pointed out in that case that: 'The company had no right, without agreement with the insured, to apply a dividend, payable in cash, to the reduction of the advance against the policy.'

"In the instant case, as pointed out, the Company had such an agreement with insured. *The assignment mentioned above specifically states that it is made as collateral security for the payment of the loan* (italics supplied), but it is further stated that it is agreed that the indebtedness evidenced by the note shall be and remain a first lien against the policy until fully paid. The transaction was not only called a loan, but it was treated as a loan and referred to in the note itself as a debt, and the debt was made a lien on the policy. Certainly the insured must have understood it as a loan of money. When insured signed the note, including the assignment of all sums of money, interest and benefits whatsoever then due or thereafter to become due, he gave his express assent to the application of dividends thereafter accruing on the policy to the payment of the sum so advanced. This clearly distinguishes this case from Williams v. Union Central Life Ins. Co., supra."

In Wolffe v. John Hancock Mutual Life Ins. Co., supra, the facts are strikingly similar to the facts in the instant case. In that case, as in the instant case, there was an assignment of the policy and on the date of the lapse there was a dividend assignable to the policy. In the course of the opinion the court said:

"We think the policy loan assignment was controlling. The dividend was bound by the assignment as security for the repayment of the loan. It was assigned to defendant for that purpose. It was not available to be applied against premiums. \* \* \*

"\* \* \* In other words, the amount of indebtedness to be deducted from the surrender value is the indebtedness which remains and the insured owes after crediting him with the dividend assigned as security for the payment of the indebtedness.

"The question involved here has never been decided by the courts of this state so far as we are advised. But in the case of Columbus Mutual Life Ins. Co. v. Dodson, 186 Okl. 678, 100 P.2d 256, where a loan assignment like the one involved here was under review, the court held that it was the privilege of the company and its duty to apply on the loan the dividend which had been apportioned to the policy. See, also: Northwestern Mutual Life Ins. Co. v. Barker's Executrix, 241 Ky. 490, 44 S. W.2d 292; Harvey v. Union Central Life Ins. Co., 4 Cir., 45 F.2d 78." [Mo.App., 202 S.W.2d 543.]

It was the contention of plaintiff in the trial court and it renews the contention here that the dividend of $32.45, appor-

tioned to the policy as of May 23, 1948, should have been applied by the company either in part payment of a quarterly premium on the policy on May 23, 1948, or in reduction of the outstanding policy loan, or added to the cash value of the policy on May 23, 1948. As to these contentions counsel for appellant with commendable frankness admit that if the company was required to apply this dividend in either of the three methods contended for by the plaintiff then the policy would have been in force at the time of the insured's death. We need not therefore extend this opinion by a mathematical calculation showing the result of the application of this premium to the reduction of the loan.

We are of the view that dividends assigned to the insurance company as security for a loan should be applied in payment of the loan, at least where to do so will prevent the forfeiture or cancellation of the policy unless the policy specifically provides otherwise. If, however, defendant under the circumstances here disclosed was not required to apply the dividend apportioned to this policy in reduction of the loan, the plaintiff was entitled to have it applied on a quarterly portion of the annual premium and thereby increase the net cash value so as to carry the policy beyond the day of death. If the provisions of the policy are to control notwithstanding the assignment, it will be observed that the policy provided that, "If any premium remains unpaid at the end of the grace period, dividend accumulations shall be applied to the payment of an annual premium, if sufficient, otherwise to such semi-annual or quarterly portion of the annual premium as the dividend accumulations will permit." The insured elected option (d), the dividend accumulation. On the first anniversary he made an election for the application of the dividend upon the premium. No election was made on the second anniversary of the policy and after plaintiff's demand for the proceeds of the policy upon insured's death defendant paid her the dividend of $32.45. If this dividend were applied to the quarterly premium, then the policy would not have lapsed until June 26, 1948, and there would have been a sufficient excess cash value to carry the policy as extended insurance beyond the insured's death. Option (d), if applicable, made it mandatory upon the company to apply the dividend, in the event of a lapse, so as to prevent forfeiture of the policy. Barthel v. Sovereign Camp, W. O. W., 230 Mo.App. 247, 93 S.W.2d 285. The judgment should therefore be sustained if correct, even though the court may have based it upon an erroneous theory.

But it is finally urged that the court erred in concluding as a matter of law that, "plaintiff is not estopped from asserting that the dividends should have been applied in such a manner as to provide extended insurance." Plaintiff, following insured's death, received a check for $32.45, the amount of the dividend that had been apportioned to this policy and defendant contends that by accepting the dividend she was estopped to make any further demand under this policy. We think there is no merit to this contention. When plaintiff demanded the proceeds of the policy upon the death of her husband, defendant advised her that only the dividend was available. There was then no controversy between the parties. She took what defendant erroneously told her was due. There was no release and no discharge executed by her. The payment of the lesser amount than that due did not discharge the obligation unless there was at the time a bona fide controversy. Harms v. Fidelity & Casualty Co., 172 Mo.App. 241, 157 S.W. 1046. If it were claimed that the payment of this dividend was in the nature of a compromise settlement, it could scarcely be sustained. Such a settlement would be the result of either a mutual mistake or a mistake on the part of the plaintiff and a fraud on behalf of the defendant, and these presumptions we ought not to indulge.

We are of the view that no prejudicial error was committed by the trial court and that the judgment should be sustained.